566 N.W.2d 414 (1997)
1997 ND 134
In the Matter of B.E.M., a Child.
STATE of North Dakota, COUNTY OF CASS, ex rel. L.F.F., f/k/a L.F.M., and B.E.M., a minor child, by and through his guardian ad litem, Plaintiffs and Appellees,
v.
K.D.M., Defendant and Appellant.
Civil No. 970030.
Supreme Court of North Dakota.
July 17, 1997.
*415 Dean A. Rindy (argued), Duane R. Breitling (on brief), Ohnstad Twichell, West Fargo, for Plaintiffs and Appellees.
David A. Overboe, West Fargo, for Defendant and Appellant.
VANDE WALLE, Chief Justice.
[¶ 1] Kirk Mundal appealed from the district court's second amended judgment. Kirk claims the court erred when it allowed Lucinda Meyer Flaten (Cindy), B.E.M's mother, to remove B.E.M. from North Dakota and denied his motion for change of custody. We affirm in part, reverse in part, and remand.
[¶ 2] Kirk and Cindy are the parents of B.E.M., a child born out of wedlock on January 12, 1993. Paternity was established later that year. Cindy was awarded physical custody and Kirk was given liberal visitation rights. The parties established a visitation schedule which provided B.E.M. would be with Kirk every other weekend and every Wednesday night. Both parents were awarded joint legal custody.
[¶ 3] After the birth of B.E.M, Kirk married Bonnie. Kirk and his wife reside in Fargo, North Dakota and both are currently employed. Cindy married Bruce in May 1996, and also lives in Fargo. Her spouse lives in Cannon Falls, Minnesota, a Twin Cities' suburb.
[¶ 4] In April 1996, Kirk moved to amend the judgment granting Cindy physical custody when he realized Cindy was planning to move to Cannon Falls. Kirk also moved to change B.E.M.'s last name to Mundal. Cindy responded with a motion to amend the judgment to allow her to change B.E.M.'s residence to Cannon Falls so she and B.E.M. could live with her husband. The parties agreed to the appointment of a guardian ad litem.
[¶ 5] A judicial referee found, despite Cindy's proposed move, no significant change of circumstances existed and concluded Cindy should retain custody. The referee also devised a visitation schedule whereby B.E.M. would be with Kirk every other weekend. The judicial referee refused to consider the issue of the child's name change.
[¶ 6] Kirk requested the district court review the findings and recommendations. The district court vacated its previous order confirming the referee's findings and conclusions because the referee improperly concluded the out-of-state move was not a significant change of circumstance and because the referee did not determine whether such a move was in the best interest of the child. The court remanded the matter to the referee for further proceedings consistent with the court's opinion.
[¶ 7] Upon remand, the referee, in amended findings of fact and conclusions of law, found a significant change of circumstance existed because of Cindy's move, and determined the issue of the best interests of the child. The referee reviewed the report of the appointed guardian ad litem, which considered the statutory factors found in *416 N.D.C.C. § 14-09-06.2. The guardian ad litem found both parents loved and cared for the child and both had the capacity to provide good parenting, but, because there was no evidence to the contrary, the guardian ad litem reported a change in custody was not necessary to serve the best interest of the child. Using this report, the referee concluded "upon all the evidence presented ... it is in [the child's] best interest to remain [with his mother]." The referee recognized the problems the distance between the two parents would create with visitation, but found the distance should not interfere with the alternating weekend schedule the parties had been using. These findings were reviewed by the district court and approved and confirmed.
[¶ 8] The district court entered the second amended judgment in late November 1996, in accordance with the referee's findings. The second amended judgment granted Cindy's motion to move B.E.M. out of state and continuation of biweekly visits and denied Kirk's motion for change of custody. Kirk's appeal is from this judgment.
[¶ 9] A trial court's decision to allow the removal of a child from this state is a finding of fact. Thomas v. Thomas, 446 N.W.2d 433, 434 (N.D.1989). We will not reverse a trial court's finding of fact unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P.; Stout v. Stout, 1997 ND 61, ¶ 7, 560 N.W.2d 903; Mosbrucker v. Mosbrucker, 1997 ND 72, ¶ 5, 562 N.W.2d 390. A finding of fact is clearly erroneous if it is apparent to the reviewing court a mistake has been made, if the finding was induced by an erroneous view of the law, or if there is no evidence to support it. McDonough v. Murphy, 539 N.W.2d 313, 316 (N.D.1995).
[¶ 10] When a custodial parent seeks to remove the child from the state, he or she must obtain the consent of the noncustodial parent, or, when consent is not granted, a court order. N.D.C.C. § 14-09-07. The primary concern with removing a child is whether the move is in the child's best interest. Thomas, 446 N.W.2d at 434; Olson v. Olson, 361 N.W.2d 249, 252 (N.D.1985); Burich v. Burich, 314 N.W.2d 82, 85 (N.D.1981). Often, when a motion to remove a child from the jurisdiction is filed, the other spouse seeks a change in custody. See, e.g., McDonough, 539 N.W.2d at 315.
[¶ 11] Here we have competing motions for change of custody and change of residence. We have recently held a motion brought under the removal statute, N.D.C.C. § 14-09-07, must be analyzed under four factors with the paramount concern the best interests of the child. Stout v. Stout, 1997 ND 61, 560 N.W.2d 903. A motion for change of custody is different from a motion for relocation. Stout, 1997 ND 61, ¶ 54, 560 N.W.2d 903. In determining if a change of custody is necessary, a court must apply a two step process. Van Dyke v. Van Dyke, 538 N.W.2d 197, 201 (N.D.1995). First, the court must consider if there is a significant change of circumstances since the original custody decree. Hagel v. Hagel, 512 N.W.2d 465, 467 (N.D.1994). If there is a significant change the court must determine if this change compels the court to change custody to serve the best interests of the child. McDonough, 539 N.W.2d at 316.
[¶ 12] If the trial court grants the motion to remove the child from the state, the motion for change of custody is effectively denied, provided the only basis for the motion was the planned move, because the best interests of the child have already been considered in the context of the move. McDonough, 539 N.W.2d at 319.
[¶ 13] If the trial court denies the motion to remove the child, the court must inquire of the custodial parent whether she will move without the child. Wright v. Wright, 431 N.W.2d 301, 304 (N.D.1988); Starke v. Starke, 458 N.W.2d 758, 760 (N.D.App.1990). If the custodial parent will move even if the motion to relocate is denied, there exists as a matter of law a significant change in circumstances. Under those facts, the move of the custodial parent away from the child compels a change of custody in the best interests of the child. If the custodial parent will not move if the motion to remove the child is denied, there is no significant change of circumstances justifying a change of custody unless other reasons are alleged. If there are reasons other than the removal of the *417 child, the trial court must first determine if those reasons are significant changes of circumstances and, second, if they compel a change of custody in the best interests of the child.
[¶ 14] Cindy stated she would move regardless of whether her motion to relocate was granted or denied. We agree with the district court Cindy's proposed move is a significant change of circumstances. But, this conclusion is relevant only if Cindy's motion to relocate is denied. We therefore review the trial court's determination the move is in the best interests of the child.
[¶ 15] As already noted, we recently reviewed the statutory and case law governing the removal of a child in Stout v. Stout, 1997 ND 61, 560 N.W.2d 903. There, after review of several other state's statutes, we adopted a four-step analysis to determine whether the removal is in the child's best interests and should be granted. We stated:
"[W]e require the trial courts of this state, when considering requests to move a child out of North Dakota, to apply the following four-factor analysis to the facts of each case with the primary concern being the best interests of the child:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,
2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,
3. The integrity of the noncustodial parent's motives for opposing the move,
4. Whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation."
Stout, 1997 ND 61, ¶ 34, 560 N.W.2d 903 (emphasis added). We review the district court's decision to allow Cindy to move under this standard, recognizing, however, our opinion in Stout was filed after the district court's second amended judgment was entered.
[¶ 16] We do not believe the district court erred in its second amended judgment. The referee's amended findings found B.E.M. thrived in his mother's custody and, upon all the evidence, it was best to leave him with her. On this record, there are advantages in Cindy's move to Minnesota. She and her husband will be able to provide a two-parent home for B.E.M. with an adequate income to meet the child's needs. Kirk argues the same advantages exist if Cindy remains in Fargo. It is axiomatic that a newly-wed couple wants to live together and that the child is benefited by the satisfaction the custodial parent derives from residing with her spouse. Kirk does not recognize the guardian ad litem's report, which states the best interest of the child would be served by staying with Cindy, notwithstanding the move. Both parents were found to care for B.E.M.'s welfare, but the best interest of the child dictates Cindy retain custody.
[¶ 17] Although her marriage occurred shortly after Kirk's motion to change custody, Cindy's testimony shows her decision to move was not motivated by a desire to hinder Kirk's rights. Cindy testified she was going to move, regardless of whether she retained custody. This fact distinguishes this case from many removal cases, wherein the custodial parent will not move without the child. See, e.g., Wright v. Wright, 431 N.W.2d 301, 304 (N.D.1988). Cindy intended to move to start her new job and live with her husband.
[¶ 18] The record indicates Kirk resisted the move out of a good-faith desire for the well-being of his son. Kirk wishes to maintain a close, physical relationship with his son. But this is not, by itself, the sole consideration of what is in the best interest of the child.
[¶ 19] Originally, the parties stipulated to "reasonable visitation," which, although never delineated, contemplated Kirk would have B.E.M. every other weekend and every Wednesday night. This arrangement appears to be the basis of the judicial referee's initial findings of fact and conclusions of law, dated June 13, 1996, which stated:
"[t]he visitation schedule for the parties shall be as follows:

*418 Paragraph 8 of the Amended Judgment should be amended to read as follows:
The Defendant's right of reasonable and liberal visitation shall be defined as follows, unless otherwise agreed to by the parties:
a. Every other weekend commencing on Friday evening and continuing until 8:00 p.m. on Sunday...."
[¶ 20] This visitation schedule provides less contact between B.E.M. and his father than when Cindy lived in Fargo. In Stout, we stated a visitation schedule which provided for less frequent visits but extended the time period of each visit preserved the non-custodial parent's right to foster and develop a relationship with his or her child. 1997 ND 61, ¶ 31, 560 N.W.2d 903. The visitation schedule devised by the judicial referee and affirmed by the district court in the second amended judgment does not adhere to this principle. By eliminating the Wednesday evening visits, the court not only decreases the frequency of Kirk's visits with B.E.M., it also decreases the total amount of time Kirk has with his child. It appears from the record Kirk made a motion proposing an alternate visitation schedule, but the district court did not act on this motion prior to Kirk's appeal, and this alternate arrangement is not before this court. Thus, with regards to visitation, we reverse the second amended judgment of the district court andremand to the district court to devise a visitation schedule in accordance with our holding in Stout, 1997 ND 61, ¶ 31, 560 N.W.2d 903.
[¶ 21] The judicial referee refused, both in her initial and amended findings of facts and conclusions of law, to discuss Kirk's motion to change B.E.M.'s last name. It appears the referee believed she did not have the authority to determine the motion to amend the judgment to change B.E.M.'s last name and that a name change could be obtained only as provided by Chapter 32-28, N.D.C.C. Kirk, in his request for review, did not raise the issue to the district court, and, the court did not address it in its memorandum or in the second amended judgment. Although, Kirk raises the issue on appeal, Kirk failed to preserve the issue for appeal, and we will not consider it. See Eastburn v. B.E., 545 N.W.2d 767, 773 (N.D.1996).
[¶ 22] We affirm the second amended judgment in permitting Cindy to remove B.E.M. from the state and denying Kirk's motion for change of custody. We reverse as to visitation and remand for entry of an order providing an alternative visitation schedule.
[¶ 23] MESCHKE, MARING and NEUMANN, JJ., concur.
SANDSTROM, J., concurs in the result.