2015 ND 99

**Deanne M. STAI–JOHNSON, f/k/a/ Deanne M. Johnson, Plaintiff and Appellant**

v.

**Mitchell R. JOHNSON, Defendant and Appellee.**

**No. 20140339.**

Supreme Court of North Dakota.

April 28, 2015.

Maureen Holman, Fargo, ND, for plaintiff and appellant.

James R. Brothers, Fargo, ND, for defendant and appellee.

McEVERS, Justice.

[¶ 1] Deanne Stai–Johnson, formerly Johnson, appeals the judicial referee's order denying her request to move out of state with the child over whom she has primary residential responsibility. We affirm, concluding the judicial referee's find-

ings on the *Stout–Hawkinson* factors were not clearly erroneous.

### I

[¶ 2] Deanne Stai–Johnson and Mitchell Johnson were married in 1998. The parties had two children during their marriage, R.S.J. and J.M.J. Johnson was in the military and the parties resided in various locations, before moving to Fargo in 2009. Stai–Johnson and Johnson divorced in 2013. Stai–Johnson was awarded primary residential responsibility of the younger child, J.M.J., and Johnson was awarded primary residential responsibility of the older child, R.S.J. On February 11, 2014, Stai–Johnson filed a motion requesting permission to move out of state, with J.M.J., to Kelliher, Minnesota. In an affidavit in support of the motion, Stai–Johnson alleged she sought to be closer to family, wanted to obtain employment and further her education in Bemidji, Minnesota, and the schools in Kelliher would benefit J.M.J. Johnson opposed her motion to relocate.

[¶ 3] At the hearing on the motion to relocate, Stai–Johnson, Johnson, and an extended family member of Stai–Johnson testified. Stai–Johnson testified she could obtain better jobs in Bemidji, if relocation was permitted. Stai–Johnson testified one of the jobs she applied for in Bemidji offers free college credit at Bemidji State University, which would allow her to obtain a masters degree in business administration. Stai–Johnson also testified the school J.M.J. would attend in Kelliher is a good quality school that would be more affordable, as J.M.J. currently attends a private school. Additionally, Stai–Johnson testified another benefit to the move would be that she would have the added support of her extended family members, who live in Kelliher, and both teach at and attend the school J.M.J. would attend. Finally, Stai–Johnson testified the Kelliher area offers numerous outdoor activities for J.M.J. Johnson testified that J.M.J. already participates in the same outdoor activities that Stai–Johnson asserted are available in Kelliher, in Fargo with his father and brother. Johnson testified the schools in the Fargo area are of a good quality and offer various advanced placement courses. Johnson testified as to his concerns regarding his reduced parenting time with J.M.J., if relocation occurs. Johnson testified J.M.J. and R.S.J. have a close relationship and attend each other's activities. However, Johnson testified he was concerned J.M.J. and R.S.J. may not see each other as often, if relocation was allowed, because R.S.J. and Stai–Johnson have a strained relationship.

[¶ 4] The judicial referee denied Stai–Johnson's motion requesting permission to move out of state, concluding the move was not in the children's best interests. Particularly, the judicial referee found the school system and extracurricular activities in Kelliher did not offer a greater advantage to J.M.J., Stai–Johnson's commute to work and school would require her to be away from J.M.J. for an extended period of time each day, J.M.J. would lose parenting time with Johnson, and R.S.J. and J.M.J. would have diminished time, proximity, and personal contact together if relocation was allowed. Stai–Johnson appealed, arguing the judicial referee failed to properly analyze the *Stout–Hawkinson* factors in denying her motion to move out of state.

### II

[¶ 5] A district court's decision whether the move is in the best interests of the child is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Gilbert v. Gilbert,* 2007 ND 66, ¶ 6, 730 N.W.2d 833. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no

evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made." *Tibor v. Tibor*, 1999 ND 150, ¶ 8, 598 N.W.2d 480. "In reviewing findings of fact, we must view the evidence in the light most favorable to the findings. A choice between two permissible views of the evidence is not clearly erroneous. Simply because we might view the evidence differently does not entitle us to reverse the trial court." *Reimche v. Reimche*, 1997 ND 138, ¶ 12, 566 N.W.2d 790 (citations omitted) (quotation marks omitted).

■■■ [¶ 6] Under N.D.C.C. § 14–09–07(1), "[a] parent with primary residential responsibility for a child may not change the primary residence of the child to another state except upon order of the court or with the consent of the other parent, if the other parent has been given parenting time by the decree." "The burden is on the custodial parent to prove, by a preponderance of the evidence, that the move is in the child's best interests." *Graner v. Graner*, 2007 ND 139, ¶ 13, 738 N.W.2d 9. This Court has recognized the difficult task before the district court in relocation disputes:

"In every relocation dispute, the court must try to accommodate the competing interests of the custodial parent who desires to seek a better life for herself and the children in a different geographical area; the child's interest in maintaining a meaningful relationship with the noncustodial parent; the noncustodial parent's interest in maintaining a meaningful relationship with the child; and finally, the state's interest in protecting the best interests of the child."

*Schmidt v. Bakke*, 2005 ND 9, ¶ 17, 691 N.W.2d 239 (quoting *Stout v. Stout*, 1997 ND 61, ¶ 32, 560 N.W.2d 903). When determining whether a move is in the best interests of the child, the district court must apply the following four-factor analysis outlined in *Stout*, at ¶ 33, and modified in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the custodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

. . . .

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Dvorak v. Dvorak*, 2006 ND 171, ¶ 13, 719 N.W.2d 362. No single factor is dominant, and what may be a minor factor in one case may have a greater impact in another. *Id.* at ¶ 14.

[¶ 7] In this case, Stai–Johnson has primary residential responsibility of J.M.J. and Johnson did not consent to the change of J.M.J.'s primary residence. As a result, it was necessary for Stai–Johnson to obtain a court order permitting the change of residence. *See* N.D.C.C. § 14–09–07(1). The judicial referee applied the *Stout–Hawkinson* factors and found the move to Minnesota was not in the children's best interests. Stai–Johnson argues the judicial referee's findings regarding factors one and four were clearly erroneous. Neither Stai–Johnson, nor Johnson, dispute the judicial referee's findings under factors two and three, which pertain to the integrity of the custodial parent's motive for

relocation and the noncustodial parent's motive for opposing the move. Therefore, we will only review the judicial referee's findings of fact under factors one and four.

### A.

[¶ 8] Stai–Johnson argues the judicial referee erroneously applied the first *Stout–Hawkinson* factor, which pertains to the prospective advantages of the move in improving the custodial parent's and child's quality of life. *Hawkinson*, 1999 ND 58, ¶ 6, 591 N.W.2d 144. Specifically, Stai–Johnson argues the judicial referee ignored the advantage of her and J.M.J. having the support of her friends and extended family in the Kelliher area and ignored the fact that she no longer is employed in Fargo. According to Stai–Johnson, instead of focusing on the advantage of her obtaining employment in Bemidji, the judicial referee relied on a negative factor, the commute between Bemidji and Kelliher for work and school. Further, Stai–Johnson asserts one of the jobs she applied for offers free college credit, which would allow her to obtain a masters degree in business administration. Stai–Johnson also asserts the school J.M.J. would attend in Kelliher provides advantages because it is a good quality school that will be more affordable, as J.M.J. currently attends a private school. Additionally, Stai–Johnson asserts another benefit to the move is that her extended family members both teach at and attend the school J.M.J. would attend. Finally, Stai–Johnson contends the Kelliher area offers numerous outdoor activities for J.M.J.

[¶ 9] Under the first *Stout–Hawkinson* factor, the district court must balance the advantages of the move, while recognizing the importance of maintaining continuity and stability. *Schmidt*, 2005 ND 9, ¶ 18, 691 N.W.2d 239. The district court must give due weight to both economic and noneconomic advantages of the move. *Dickson v. Dickson*, 2001 ND 157,

¶ 12, 634 N.W.2d 76. Some of the factors a district court may consider in analyzing factor one include:

> [T]he custodial parent's proposed employment at the relocation site, whether the custodial parent's and child's health and well-being are benefitted, whether the custodial parent has remarried and requests to move to live with the new spouse, whether the custodial parent will have more time to spend with the child, whether there are family members who will provide a support network, the child's reasonable preference, and educational opportunities.

*Graner*, 2007 ND 139, ¶ 15, 738 N.W.2d 9.

[¶ 10] The judicial referee found Stai–Johnson has extended family and numerous friends near Kelliher, who she asserts will improve her quality of life and can assist her with her parenting responsibility. The judicial referee also found Stai–Johnson was not seeking employment in Fargo, but asserts she can be employed in Bemidji. However, the judicial referee noted Stai–Johnson would need to commute to and from Bemidji for work and school, which could require her to be out of the home from 7 a.m. to 6 p.m. each day. Recognizing family and friends would be available to help care for J.M.J., the judicial referee found "this is not an advantage to J.M.J. over [Stai–Johnson's] current or past availability to parent." Further, the judicial referee found Stai–Johnson had not shown the school system and extracurricular activities available in Kelliher offered a greater advantage to J.M.J. over his current location. The judicial referee also found the record had not established the housing in Kelliher would be an advantage over the available housing in Fargo, J.M.J. did not express a preference, and the move was not related to any marriage plans for Stai–Johnson.

[¶ 11] The judicial referee considered the potential advantages of a move to Kelliher for both J.M.J. and Stai–Johnson, as required by factor one. The record indicates that although Stai–Johnson has extended family members who live near Kelliher, J.M.J.'s father and brother, whom J.M.J. has a close relationship with, live in Fargo. Kelliher has a good quality school and would provide numerous extracurricular activities to J.M.J., in particular, J.M.J. enjoys trapshooting, hunting, snowmobiling, ice fishing, choir, band, football, and basketball. The school in Kelliher is a public school, so Stai–Johnson would no longer have to pay a private school education for J.M.J. However, the record also indicates J.M.J.'s current school provides a good quality education and Stai–Johnson could enroll J.M.J. in a public school in the Fargo area to reduce costs. Further, according to the record, the extracurricular activities available to J.M.J. in Kelliher are also available in Fargo. Evidence in the record supports the judicial referee's findings regarding the prospective advantages of the move under the first *Stout–Hawkinson* factor. We conclude the judicial referee's findings pertaining to the first factor are not clearly erroneous.

## B.

[¶ 12] Stai–Johnson argues the judicial referee's application of the fourth *Stout–Hawkinson* factor is clearly erroneous. The fourth factor pertains to the potential negative impact on the relationship between the noncustodial parent and whether there is a realistic opportunity for visitation. *Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144. In particular, Stai–Johnson argues she proposed a substitute parenting schedule that would maintain the parent-child relationship between Johnson and J.M.J., as required by this factor. Stai–Johnson asserts the judicial referee erroneously relied on the loss of parenting time for Johnson, rather than

considering the potential to create a parenting schedule that could preserve Johnson's relationship with J.M.J.

[¶ 13] In analyzing the fourth factor, a district court considers "the negative impact of the move on the noncustodial parent's relationship with the children and the ability to restructure visitation to foster and preserve the relationship." *Graner*, 2007 ND 139, ¶ 19, 738 N.W.2d 9. "[A] move sought in good faith and to gain legitimate advantages for the custodial parent and the child must not be denied simply because visitation cannot continue in the existing pattern." *Goff v. Goff*, 1999 ND 95, ¶ 17, 593 N.W.2d 768. "Even though a move may add costs and distance to visitations, making it impossible to continue the frequency of visits between the noncustodial parent and child, the relationship between them can be preserved by a restructured visitation schedule." *Tibor*, 1999 ND 150, ¶ 24, 598 N.W.2d 480.

[¶ 14] The judicial referee found Johnson spends considerable time engaging in routine parenting and extracurricular activities with both J.M.J. and R.S.J. Further, the judicial referee found a very close bond exists between Johnson and J.M.J. The judicial referee's findings and order for amended judgment provides:

> It is difficult to imagine a schedule that would allow [Johnson] to regain the time lost on Fridays and Mondays if the [Stai–Johnson] request to relocate is granted. For instance, if more of the summer is spent with the [Johnson], this diminishes the participation by J.M.J. in the numerous outdoor and family activities listed by the [Stai–Johnson] as one of the benefits of the relocation.

Although the parties struggle with communication and cooperation, the judicial referee found there was no reason to believe either party would not comply with any parenting schedule put in place, if the

move were permitted. The judicial referee considered the potential negative impact the move would have on the relationship between Johnson and J.M.J. and the realistic opportunity for visitation, as required by the fourth factor. Stai–Johnson argues the judicial referee relied too heavily on the loss of parenting time between Johnson and J.M.J., if permission to move were granted. Although this Court has recognized "[a] visitation schedule which provides less frequent, but extended, visitation periods can preserve a noncustodial parent's right to foster and develop a relationship with the child," we also "view the evidence in the light most favorable to the findings." *Goff*, 1999 ND 95, ¶ 18, 593 N.W.2d 768; *Reimche*, 1997 ND 138, ¶ 12, 566 N.W.2d 790. "A choice between two permissible views of the evidence is not clearly erroneous, and simply because we might have viewed the evidence differently does not entitle us to reverse the trial court decision." *Hurt v. Hurt*, 2001 ND 13, ¶ 16, 621 N.W.2d 326. We conclude the judicial referee's findings on the fourth *Stout–Hawkinson* factor are not clearly erroneous because the judicial referee conducted the proper analysis for this factor and evidence in the record supports the findings.

[¶ 15] The judicial referee also considered the effects the proposed move would have on the relationship between J.M.J. and R.S.J. In *Schmidt*, we recognized "the effect of the separation of siblings is a consideration in the trial court's analysis of the best interests of the child and whether to grant a motion to relocate a child out of this state." 2005 ND 9, ¶ 18, 691 N.W.2d 239. Accordingly, on this record, it was not clearly erroneous for the judicial referee to consider the effect of the separation of siblings in this case. The judicial referee found J.M.J.'s relationship with his brother, R.S.J., would deteriorate, if the move were permitted. Because R.S.J.'s relationship with Stai–Johnson is strained, J.M.J.'s parenting time with Johnson is the primary source of J.M.J.'s time together with R.S.J. The judicial referee found the two brothers have a very close relationship and the move would likely result in a reduction of time they could spend with each other. The judicial referee ultimately found the loss of time, proximity, and personal contact between the two brothers is not in their best interests. The record indicates J.M.J. and R.S.J. generally only spend time together, when J.M.J. has parenting time with Johnson. Here, the judicial referee acknowledged this case presents "a close call," but found the deterioration of the relationship between the two siblings, J.M.J. and R.S.J. as crucially important in determining the best interests of the children.

### III

[¶ 16] On this record, the judicial referee properly applied the *Stout–Hawkinson* factors and gave the effect of diminished contact between separated siblings proper consideration. We are not left with a definite and firm conviction the judicial referee made a mistake. *See Stout*, 1997 ND 61, ¶ 52, 560 N.W.2d 903 (stating "where the factors favor neither parent, or favor the noncustodial parent, the trial court's denial of the custodial parent's request to move will be affirmed"). We affirm the judicial referee's order denying Stai–Johnson's motion to relocate.

[¶ 17] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.