2016 ND 76

Gregory C. LARSON, Plaintiff, Appellant and Cross–Appellee

v.

Ana Cristina Dos Santos Conceicao LARSON n/k/a, Ana Cristina Dos Santos Conceicao, Defendant, Appellee and Cross–Appellant

and

State of North Dakota, Statutory Real Party In Interest.

No. 20150178.

Supreme Court of North Dakota.

April 12, 2016.

Carey A. Goetz, Bismarck, N.D., for plaintiff, appellant and cross-appellee.

Justin D. Hager, Bismarck, N.D., for defendant, appellee and cross-appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Gregory C. Larson appealed from a district court order denying his motion to modify primary residential responsibility of their minor children from Ana Cristina Conceicao to him. Conceicao cross-appeals from an order denying her motions to relocate and for attorney fees. We affirm, concluding the district court's findings of fact on each party's motion are not clearly erroneous and the court did not

abuse its discretion in denying Conceicao attorney fees.

## I.

[¶ 2] The parties divorced in 2006, have two minor children together, and currently reside in Mandan. Conceicao was awarded primary residential responsibility with liberal parenting time granted to Larson. In 2014, Larson moved to modify primary residential responsibility, alleging Conceicao was willfully interfering with his parenting time and relationship with the children. The district court found Larson established a prima facie case for modification and granted an evidentiary hearing on his motion.

[¶ 3] A few weeks before the hearing on Larson's motion, Conceicao filed a motion to relocate to Florida with the children. As a native of Brazil, Conceicao claimed a move to Florida would be in her and the children's best interests. Conceicao claimed Florida is more racially diverse and offers easier travel to Brazil. Conceicao stated in the motion and in her supporting affidavit that her motion was contingent on the denial of Larson's motion to modify primary residential responsibility. She stated she would not move if the district court awarded Larson primary residential responsibility of the children.

[¶ 4] At the hearing on Larson's motion, the district court asked the parties whether Conceicao's motion to relocate would also be heard. Conceicao's attorney stated they preferred to hear both motions at the same time, but reiterated her motion was dependent on the court denying Larson's motion and retaining primary residential responsibility with Conceicao. Larson's attorney stated they wished to proceed at a later date because they were not completely prepared to argue Conceicao's relocation motion. The court decided to hear Conceicao's motion to relocate at a later date if it denied Larson's motion to modify primary residential responsibility.

[¶ 5] The district court denied Larson's motion to modify primary residential responsibility. The court found Larson established a material change in circumstances. The court found Conceicao made unfounded reports to the police, interfered with Larson's parenting time, and in other instances displayed poor judgment and acted divisively in front of the children. Although the court found a material change in circumstances had occurred, it found changing primary residential responsibility to Larson would not be in the children's best interests. The court also ordered Larson to pay Conceicao $3,000 in attorney fees.

[¶ 6] After the subsequent hearing on Conceicao's motion to relocate, she moved for attorney fees, claiming she had a need for attorney fees and Larson had the ability to pay. The district court denied Conceicao's motions to relocate and for attorney fees. The court found Conceicao failed to establish a move to Florida would be in the children's best interests.

## II

[¶ 7] Larson argues the district court erred in denying his motion to modify primary residential responsibility.

[¶ 8] A district court's decision on a motion to modify primary residential responsibility is a finding of fact, subject to the clearly erroneous standard of review. *Seibold v. Leverington*, 2013 ND 173, ¶ 12, 837 N.W.2d 342. "A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made." *Id.* We view the evidence in the light most favorable to the findings and we will not

reweigh the evidence. *Hentz v. Hentz,* 2001 ND 69, ¶ 12, 624 N.W.2d 694.

[¶ 9] A motion for modification of primary residential responsibility filed more than two years after an earlier order establishing residential responsibility is governed under N.D.C.C. § 14–09–06.6(6), which provides:

> The court may modify the primary residential responsibility after the two-year period following the date of entry of an order establishing primary residential responsibility if the court finds:
>
> a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and
>
> b. The modification is necessary to serve the best interest of the child.

[¶ 10] Under N.D.C.C. § 14–09–06.6(6), a district court may modify primary residential responsibility if it finds: (1) a material change in circumstances has occurred; and (2) a modification is necessary to serve the child's best interests. *Seibold,* 2013 ND 173, ¶¶ 10–11, 837 N.W.2d 342. To find a modification is in the child's best interests, the court must consider the best interest factors under N.D.C.C. § 14–09–06.2(1)(a)–(m):

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

j. Evidence of domestic violence. . . .

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physi-

cal harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

The best interest factors must be analyzed in light of two additional considerations: First, the best interests of the child factors must be gauged against the backdrop of the stability of the child's relationship with the custodial parent, because that stability is the primary concern in a change of custody proceeding. Second, after balancing the child's best interests and stability with the custodial parent, the trial court must conclude that a change in the status quo is required. A child is presumed to be better off with the custodial parent, and close calls should be resolved in favor of continuing custody. A change should only be made when the reasons for transferring custody substantially outweigh the child's stability with the custodial parent.

*Seibold*, at ¶ 11 (quoting *Vining v. Renton*, 2012 ND 86, ¶ 17, 816 N.W.2d 63).

[¶ 11] Here, the district court found a material change in circumstances occurred and neither party challenges that finding. In its analysis of the best interest factors, the court found factor (d) favored Conceicao, factor (e) slightly favored Larson, and the 11 remaining factors favored neither party. The court stated that "close calls are presumed to favor the custodial parent, and this case involves a close call. Accordingly, [Larson's] motion for change of custody fails."

[¶ 12] Larson argues the district court erred in denying his motion because the court did not consider Conceicao's intention to relocate with the children in its analysis of the best-interest factors. Larson argues Conceicao's motion to relocate should have been considered under factor (d), which promotes the maintenance of continuity in the children's home and community, and factor (h), concerning the home, school and community record of the children and the potential effect of any change.

[¶ 13] The district court addressed factors (d) and (h) as follows:

As to factor "d", the Court finds [Conceicao's] assertion compelling that she "has remained in the same house with a neighbor whom the children love and consider to be a Grandma." *In deciding that this factor favors [Conceicao], the Court continues its practice of giving no weight to arguments involving or focused on the Defendant's Motion to Relocate since that motion has not been heard.* Further, while [Larson's] assertion of extended family has some merit, after taking into account the "stability aspect" of the *Machart* and *Gussiaas* decisions, the Court deems [Conceicao's] assertion as to being in the same house strongly outweighs [Larson's] position in Factor "d." Accordingly, after having reviewed the testimony and exhibits ... along with the cited case law, the Court finds Factor "d" favors [Conceicao].

. . . .

This factor ["h"] received little attention by the parties. [Larson] did not present credible testimony that he would be better than [Conceicao] under this factor. *As to his closing brief argument that this factor favors him due to [Conceicao's] desire to relocate, the Court continues its practice of giving no weight to arguments involving or focused on the Defendant's Motion to Re-*

*locate since that motion has not been heard . . . . This Court finds factor "h" to be a draw.*

Emphasis added.

[¶14] In its analysis of factors (d) and (h), the district court gave no weight to Conceicao's motion to relocate because the motion had not been heard. Larson argues the motion to relocate must be considered because a parent's desire to move children from their stable environment would have a negative effect on their home, their school situation and their involvement in the community.

[¶15] Earlier cases have dealt with competing motions for modification of primary residential responsibility and relocation. *See Seay v. Seay*, 2015 ND 42, ¶ 3, 859 N.W.2d 398; *Graner v. Graner*, 2007 ND 139, ¶ 3, 738 N.W.2d 9; *Frieze v. Frieze*, 2005 ND 53, ¶ 2, 692 N.W.2d 912; *In re B.E.M.*, 1997 ND 134, ¶ 4, 566 N.W.2d 414; *McDonough v. Murphy*, 539 N.W.2d 313, 315 (N.D.1995); *Thomas v. Thomas*, 446 N.W.2d 433, 434 (N.D.1989); *Novak v. Novak*, 441 N.W.2d 656, 657 (N.D.1989); *Wright v. Wright*, 431 N.W.2d 301, 302–03 (N.D.1988). In those cases, we never held a district court must consider the proposed relocation in its analysis of the best interests factors under N.D.C.C. § 14–09–06.2(1).

[¶16] In the context of a motion to relocate when each parent had joint custody, this Court stated, "The district court may consider the intention of the parent making the motion to relocate with the child in judging the child's best interests under [N.D.C.C.] § 14–09–06.2." *Dunn v. Dunn*, 2009 ND 193, ¶ 11, 775 N.W.2d 486 (quoting *Maynard v. McNett*, 2006 ND 36, ¶ 21, 710 N.W.2d 369). In both *Dunn* and *Maynard*, however, the parent seeking to relocate was going to move regardless of the court's decision. *Dunn*, at ¶ 11; *Maynard*, at ¶ 21.

[¶17] When there are competing motions for modification of primary residential responsibility and relocation, this Court has stated:

When a custodial parent requests permission to change the residence of the children, a trial court should determine whether that parent will move regardless of the court's decision to allow the children to move. Only in the event a custodial parent will move without the children does that move constitute a change of circumstances for purposes of deciding a companion motion for change of custody.

*Wright*, 431 N.W.2d at 304; *see also B.E.M.*, 1997 ND 134, ¶ 13, 566 N.W.2d 414.

[¶18] In *Wright*, a majority of this Court suggested, but did not hold, "[w]hen, as is the case here, a companion motion for change of custody is dependent on whether the trial court denies a motion to change the children's residence, the trial court ordinarily should first resolve the motion to change the residence of the children." *Wright*, 431 N.W.2d at 305, n. 2; *see also id.* at 305 ("Although the procedure suggested by the majority might have avoided the result in this case, we should nevertheless leave to the trial courts the flexibility to, in their discretion, fashion a procedure that will fairly and equitably resolve the competing motions.") (VandeWalle, J., concurring specially).

[¶19] Here, in a procedural scenario opposite that of *Wright*, Conceicao moved to relocate with the children after Larson moved to modify primary residential responsibility. Conceicao's motion was dependent on whether the district court denied Larson's motion to modify primary residential responsibility. She stated she would not move to Florida if Larson was awarded primary residential responsibility

of the children. Because Conceicao filed her motion shortly before the hearing on Larson's motion, the court inquired whether her motion should be heard at the same time. Larson suggested the court hear Conceicao's motion at a later date. The court decided to hear Conceicao's motion to relocate later if it denied Larson's motion to modify primary residential responsibility. Under these circumstances, we cannot conclude the court's decision to not consider Conceicao's relocation motion in its analysis of the best interest factors in deciding Larson's motion was an abuse of discretion nor does it render that analysis clearly erroneous. We are not left with a definite and firm conviction a mistake has been made. We affirm the order denying Larson's motion to modify primary residential responsibility.

### III

[¶ 20] Conceicao argues the district court erred in denying her motion to relocate with the children.

[¶ 21] A district court's decision on a motion to relocate is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Stai–Johnson v. Johnson*, 2015 ND 99, ¶ 5, 862 N.W.2d 823. Under N.D.C.C. § 14–09–07(1), "[a] parent with primary residential responsibility for a child may not change the primary residence of the child to another state except upon order of the court or with the consent of the other parent, if the other parent has been given parenting time by the decree." The parent moving for permission to relocate has the burden of proving by a preponderance of the evidence the move is in the child's best interests. *Stai–Johnson*, at ¶ 6. In deciding whether relocation is in the child's best interests, the district court must apply the four factors outlined in *Stout v. Stout*, 1997 ND 61, ¶ 33, 560 N.W.2d 903, and modified

in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move, . . . .

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Dvorak v. Dvorak*, 2006 ND 171, ¶ 13, 719 N.W.2d 362 (quoting *Dvorak v. Dvorak*, 2005 ND 66, ¶ 16, 693 N.W.2d 646). "No single factor is dominant, and what may be a minor factor in one case may have a greater impact in another." *Stai–Johnson*, at ¶ 6.

### A

[¶ 22] Conceicao argues the district court's analysis of the first *Stout–Hawkinson* factor was induced by an erroneous view of the law. She argues the court's focus was too narrow because it found a move would mostly benefit her and would not significantly improve the children's quality of life. She argues because the move would benefit her, that benefit would inure to the children and the move would be in their best interests.

[¶ 23] "Under the first *Stout–Hawkinson* factor, the district court must

balance the advantages of the move, while recognizing the importance of maintaining continuity and stability." *Stai–Johnson*, 2015 ND 99, ¶ 9, 862 N.W.2d 823. The court must weigh both economic and non-economic advantages of the move, including:

> [T]he custodial parent's proposed employment at the relocation site, whether the custodial parent's and child's health and well-being are benefitted, whether the custodial parent has remarried and requests to move to live with the new spouse, whether the custodial parent will have more time to spend with the child, whether there are family members who will provide a support network, the child's reasonable preference, and educational opportunities.

*Id.* (quoting *Graner v. Graner*, 2007 ND 139, ¶ 15, 738 N.W.2d 9).

[¶ 24] In its analysis of the first factor, the district court found the prospective advantages of a move to Florida seemed to favor Conceicao more than they favored the children. Conceicao did not present evidence of guaranteed employment in Florida, though she claimed to have the promise of employment and would earn approximately $2,000 per month. The court gave little weight to Conceicao's evidence regarding schools in Florida. Her information was obtained from the Internet without a specific source and focused on elementary rather than middle schools, which the children would soon be attending. The court found the children were doing well in school, were healthy, and were active both in extracurricular school activities and in the community. The court concluded its analysis of the first factor by stating:

> While many of the prospective advantages that [Conceicao] suggests—better year-round weather, racial and ethnic diversity, and close proximity to a Bra-

zilian community and easier travel to Brazil—may improve [Conceicao's] quality of life, the Court does not view that the suggested advantages would significantly improve the quality of the children's lives. At best, the move would be a lateral move, trading certain advantages of living in North Dakota for certain advantages of living in Florida.

[¶ 25] The district court considered the potential advantages of a move to Florida for both Conceicao and the children. The record indicates Conceicao's reasons for the proposed move are to be in warmer weather, to be in a more ethnically diverse area, and to be able to travel to Brazil more easily. She is not requesting a move because of remarriage, guaranteed employment or transfer of employment, or a desire to live near extended family who would assist in raising the children. The record indicates the housing prices in Florida are slightly more than housing in Mandan. There is no evidence on the education offered in the Florida middle schools as compared to the Mandan middle schools. There is evidence the children are or have been involved in numerous year-round extracurricular activities in Mandan, including hockey, soccer, swimming, Girl Scouts, and snow skiing. The evidence in the record supports the court's findings regarding the prospective advantages of the proposed move under the first *Stout–Hawkinson* factor. We conclude the court's findings relating to the first factor are not induced by an erroneous view of the law and are not clearly erroneous.

## B

[¶ 26] Conceicao argues the district court erred in its analysis of the second and fourth *Stout–Hawkinson* factors because there is no evidence to support the court's findings.

[¶ 27] Under the second *Stout–Hawkinson* factor, the district court must consider "[t]he integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent." *Dvorak*, 2006 ND 171, ¶ 13, 719 N.W.2d 362 (quoting *Dvorak*, 2005 ND 66, ¶ 16, 693 N.W.2d 646). Under the fourth factor, the court considers the negative impact of the proposed move on the relationship between the children and the noncustodial parent and the ability to restructure parenting time to preserve the relationship. *Stai-Johnson*, 2015 ND 99, ¶ 13, 862 N.W.2d 823.

[¶ 28] Considering the second *Stout–Hawkinson* factor, the district court found "[c]onsidering the parties' history since the divorce, in the end, the Court is left with the impression that [Conceicao's] request to relocate is, at least in part, motivated by a desire to limit [Larson's] regular contact with the children." Expressing concern with Conceicao's potential for noncompliance with restructured parenting time, the district court addressed the fourth factor at length:

> [Conceicao] has expressed a willingness to adjust [Larson's] parenting time to allow him all-summer and school-break parenting time and to have her spousal support adjusted downwardly to offset parenting time travel expenses. Although not an ideal compromise in the eyes of most non-custodial parents, longer, although less frequent, parenting time can provide an adequate basis for preserving and fostering a good parent-child relationship. In the instant case, the Court is cognizant that the parties' children are on the eve of their teen years—a time when the presence of both parents is especially important. Preteens deal with a lot of changes under any circumstance, and adding a move 2,000 miles away that offers only marginal advantages, at best, would add yet another layer to the changes they will inevitably experience in the very near future.

> That observation aside, the Court must also consider under this factor the likelihood that each parent will comply with the altered parenting time that is necessitated by a move more than 2,000 miles away.

> As mentioned earlier, there have been parenting time issues in the past. In its consideration of Factor 4, the Court drew upon several things that have occurred during the course of this litigation. Specifically and most egregiously, [Conceicao] was found in contempt when she and the children traveled to Brazil in 2011 and did not return until three weeks after the agreed-upon time, informing [Larson] via an email about their delay on the eve of their scheduled return. In addition, throughout the years since the divorce, [Conceicao] has been a chronic, unapologetic reporter of unfounded reports to local law enforcement. The Court also recalls that when asked about [Larson's] greatest strength as a parent at the January 29th evidentiary hearing, [Conceicao] responded, "Being able to pay money," and then inconsistently gave testimony later about [Larson's] positive interactions with the children.

> Even though [Conceicao] expressed her willingness to give [Larson] all-summer and school break parenting time and to decrease her spousal support to offset parenting time expenses, the Court is nevertheless left with a concern about whether [Conceicao] would comply with a new parenting plan if she were granted permission to move.

[¶ 29] Conceicao argues the district court could have fashioned a parenting

time schedule that would have preserved the parent-child bond between Larson and the children. She also argues her contempt for a one-time incident should not be sufficient for the court to find concerns she would not comply with a new parenting plan.

[¶ 30] From our review of the record, we conclude there is evidence supporting the district court's findings on the second and fourth *Stout–Hawkinson* factors. Although the contempt resulted from one incident, the remoteness of an incident can be considered by the court in weighing the evidence. *Hentz*, 2001 ND 69, ¶ 12, 624 N.W.2d 694. The court also previously found Conceicao interfered with Larson's parenting time and made unfounded reports to the police. Conceicao's past behavior was a relevant factor for the court to consider in deciding her motion. *Id.* We do not reweigh the evidence and we view the evidence in the light most favorable to the findings. *Id.* We are not left with a definite and firm conviction the court made a mistake in its findings on the second and fourth *Stout–Hawkinson* factors. We affirm the order denying Conceicao's motion to relocate.

IV

[¶ 31] Conceicao argues the district court erred by not awarding her attorney fees for her relocation motion. She was awarded $3,000 in attorney fees for defending Larson's motion and argues Larson's ability to pay is unchallenged because he acknowledged at the hearing on his motion he could pay attorney fees if forced to.

[¶ 32] Under N.D.C.C. § 14–05–23, a district court may award attorney fees in a divorce action "as may be necessary." In deciding whether to award attorney fees, the court must balance one party's needs against the other party's ability to pay and consider whether either party's actions unreasonably increased the time and expenses on the case. *Sonnenberg v. Sonnenberg*, 2010 ND 94, ¶ 19, 782 N.W.2d 654. The district court's decision whether to award attorney fees under N.D.C.C. § 14–05–23 will not be reversed on appeal unless the court abused its discretion. *Sonnenberg*, at ¶ 19. "A district court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, if its decision is not the product of a rational mental process leading to a reasonable determination, or if it misinterprets or misapplies the law." *Anderson v. Baker*, 2015 ND 269, ¶ 7, 871 N.W.2d 830.

[¶ 33] The district court addressed Conceicao's request for attorney fees:

[Conceicao] made a request for attorney fees with regard to her Motion to Relocate, arguing that she anticipated her motion to relocate would be heard at the same time as [Larson's] motion for change of custody, and it was not. The evidentiary hearing on [Larson's] motion was noticed out on September 18, 2014, and scheduled for January 28, 2015. [Conceicao's] motion to relocate was not filed until January 7, 2015, and the Court made a discretionary decision that [Conceicao's] motion was filed too late to be included in the evidentiary hearing scheduled for January 28th. [Conceicao] also argues that her request is based on her need and [Larson's] ability to pay.

The Court has considered [Conceicao's] request and will not award attorney fees to [her]. [Conceicao] was the movant and failed to prevail, and the Court finds no other compelling reason to grant the requested fees.

[¶ 34] The district court misstated the law by stating Conceicao failed to prevail. This Court has never held a party must prevail in a divorce action to be awarded

attorney fees. Nevertheless, Conceicao appears to argue she should be awarded attorney fees for her motion simply because she was awarded attorney fees for defending Larson's motion, which he did not challenge. Conceicao submitted a summary of attorney fees showing she was billed over $18,000, however, that amount is for both her motion and Larson's motion. The specific amount of attorney fees she incurred for her motion is unknown. Additionally, there is no evidence Larson unreasonably increased time spent on her motion. His request for a later hearing date on her motion is not unreasonable. From our review of the entire record, we conclude the district court did not abuse its discretion under N.D.C.C. § 14–05–23 in denying Conceicao's motion for attorney fees.

### V

[¶ 35] Conceicao requests her attorney fees on appeal. We deny her request. The district court orders denying Larson's motion to modify primary residential responsibility and Conceicao's motions for relocation and attorney fees are affirmed.

[¶ 36] DALE V. SANDSTROM, DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.