*2009 ND 203*

**Candice Nicole HRUBY (nee Kaler), n/k/a Candice Nicole Valnes, Plaintiff and Appellee**

v.

**Casey James HRUBY, Defendant and Appellant.**

No. 20090010.

Supreme Court of North Dakota.

Dec. 15, 2009.

John D. Bullis (argued) and Jenna Howell (appeared), Wahpeton, N.D., for plaintiff and appellee.

Samuel S. Johnson, Wahpeton, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1]   Casey Hruby appeals from a district court order granting Candice Valnes's motion to change the residence of their child to North Carolina and an order denying Hruby's motion to amend the findings and for a new trial.   We conclude the district court's decision to grant Valnes's motion is not clearly erroneous.   We affirm the district court's relocation decision, but we remand for the court to correct an error in the visitation schedule.

I

[¶ 2]   Hruby and Valnes have one minor child together and were divorced in July 2006.   A divorce judgment was entered incorporating the parties' stipulation, awarding Hruby and Valnes joint legal

custody, awarding Valnes physical custody of the child, and ordering Hruby to pay child support. Hruby was also awarded visitation with the child every other weekend, every other holiday, and three weeks each summer.

[¶ 3] In November 2006, Valnes moved for an order finding Hruby in contempt, claiming Hruby failed to pay the ordered child support. In response, Hruby moved for an order finding Valnes in contempt and to modify his visitation with the child. Hruby claimed Valnes was constantly interfering with his visitation, she had moved to Bemidji, Minnesota without his permission, she was often late for visitation exchanges, she refused to meet halfway in Detroit Lakes for visitation exchanges, she switched weekends whenever she wanted but would not accommodate his requests to switch weekends, and she arbitrarily changed the exchange times. Hruby requested a more defined visitation schedule and proposed the parties exchange the child in Detroit Lakes, Minnesota.

[¶ 4] After a hearing, the district court denied Valnes's motion to find Hruby in contempt and amended the judgment to modify the visitation provisions. The court set a more detailed visitation schedule, including changing the visitation times and specifying where the exchanges should occur.

[¶ 5] Valnes married Clint Valnes in May 2008. Clint Valnes is a member of the United States Army and will be stationed at Fort Bragg in North Carolina after he completes his training. Clint Valnes's military orders indicated he was going to be deployed for a year to Afghanistan in May 2009. Valnes is not employed outside the home, and plans to stay at home with the child until the child starts school.

[¶ 6] In August 2008, Valnes moved for permission to relocate with the parties' child to North Carolina. Hruby opposed Valnes's motion, arguing the move would not benefit the child and would have a negative impact on his relationship with the child because Valnes has a history of interfering with his visitation and will continue to do so. After an evidentiary hearing, the district court granted Valnes's motion to relocate and modified the visitation schedule. In November 2008, Hruby moved to amend the findings and for a new trial. The court denied his motion.

II

[¶ 7] Hruby argues the district court's decision to grant Valnes's motion is clearly erroneous because the evidence does not support the court's finding that the move is in the child's best interests and the court did not correctly apply the *Stout–Hawkinson* factors. He claims the court failed to recognize the importance of extended family, keeping the custodial family intact considering Clint Valnes's deployment, and Valnes's repeated failure to comply with the court ordered visitation.

[¶ 8] A district court's decision whether to allow relocation is a finding of fact, which will not be reversed on appeal unless the decision is clearly erroneous. *Gilbert v. Gilbert*, 2007 ND 66, ¶ 6, 730 N.W.2d 833. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or based on the entire record we are left with a definite and firm conviction that a mistake has been made. *Id.*

[¶ 9] A custodial parent may not change the residence of the child to another state except with the noncustodial parent's consent or upon order of the court, if the noncustodial parent has visitation

rights. N.D.C.C. § 14–09–07(1).[1] A court's primary consideration in a relocation case is whether the move is in the child's best interests. *Gilbert,* 2007 ND 66, ¶ 7, 730 N.W.2d 833. The parent moving for permission to relocate has the burden of proving by a preponderance of the evidence that the move is in the child's best interests. *Id.*

▮ [¶ 10] To determine whether relocation is in the child's best interests, the court must apply the four factors enumerated in *Stout v. Stout,* 1997 ND 61, ¶ 34, 560 N.W.2d 903, and modified in *Hawkinson v. Hawkinson,* 1999 ND 58, ¶ 9, 591 N.W.2d 144:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move, and

. . . .

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Gilbert,* 2007 ND 66, ¶ 8, 730 N.W.2d 833 (quoting *Hawkinson,* at ¶¶ 6, 9). One factor is not dominant and the importance of each factor will depend on the facts of the case. *Gilbert,* at ¶ 8.

▮ [¶ 11] Here, the district court made findings on all four factors. Hruby does not challenge the court's findings regarding his motive for opposing the move.

**A**

▮ [¶ 12] The first *Stout–Hawkinson* factor requires the court to consider the prospective advantages of the move, including both the economic and noneconomic benefits. *Gilbert,* 2007 ND 66, ¶ 10, 730 N.W.2d 833. Maintaining continuity and stability in the custodial family is an essential part of the analysis, and a court commits reversible error if it fails to give sufficient credence to the importance of keeping the custodial family together. *Id.*

[¶ 13] The district court found the first factor favored allowing Valnes to relocate with the child to North Carolina, stating:

The prospective advantages of the move will improve the quality of life of both [Valnes] and [the child]. There are a number of inherent benefits to the move including keeping the custodial family intact which in turn gives [the child] the benefits of living in a two parent household where the parents are able to share household tasks which, from the testimony, indicate that [Valnes] will be able to spend more quality time with [the child]. In addition, allowing [Valnes] to rejoin her husband, from the testimony, will make [Valnes] a happier and a much less conflicted person which in turn will also inherently inure to the benefit of [the child]. Finally, the Court finds that allowing the custodial family to remain intact will result in various economic benefits to that family including an increase in the standard of living of [the child].

---

1. Chapter 14–09, N.D.C.C., was amended effective August 1, 2009. Custody is now called "primary residential responsibility" and visitation is called "parenting time." *See* 2009 N.D. Sess. Laws ch. 149.

[¶ 14]   The court also made oral findings after the evidentiary hearing which were incorporated in the written order. The court found keeping the custodial family intact was the paramount factor in the case.   The court considered that Clint Valnes may be deployed to Afghanistan for a year, and said:

> Now, I've heard a great deal of argument about the fact that in this case Mr. Valnes may be deployed.   And in fact, the latest and best evidence I have is that he will be.   However, that is five months from now at a minimum.   Even so, it would absolutely—absolutely be against public policy, in my view, to prevent this couple from being together for that five months.   The atmosphere that Mr. Valnes will enter, if he is deployed within five months, may be such that this could be the last five months that they have together and it was—it is not the position of this court, and I think it would be a horrible public policy for me to deny this move on that basis, and I won't do it.   I will say this.   If Mr. Valnes is deployed, depending on the circumstances where you are, it may be best for you and the child to move back to be closer to your family, his family, and the Hruby family.   And that's something I think you should deeply consider as it affects your child, but I'm not gonna make that decision for you. That's a decision that will be between the husband and wife that are the custodial family in this situation.

[¶ 15]   Hruby contends the evidence does not support the court's findings that the move will keep the family intact and allow Valnes to spend more time with the child because Clint Valnes will be deployed to Afghanistan for a year.   He claims the first factor does not support allowing Valnes to move with the child because Valnes will not be living with her husband, her husband will not be around to share the household tasks, and Valnes will not have a support system.   He claims the court failed to properly consider the presence of extended family in the child's current location as a significant factor in denying the motion because there was evidence the child's extended family lives in North Dakota and South Dakota, and Valnes will not have a family support network in North Carolina to help her when her husband is gone.

[¶ 16]   This case is factually similar to the circumstances in *Gilbert,* 2007 ND 66, 730 N.W.2d 833.   The custodial parent moved for permission to relocate with the parties' child from North Dakota to West Virginia to live with her new spouse, whose occupation required extensive travel keeping him away from home for approximately eight months of the year.   *Id.* at ¶¶ 2–5. The district court denied the custodial parent's motion, finding there was no evidence the move would improve the custodial parent's standard of living, she had not made a good faith effort to find employment in North Dakota, and her husband is away from the residence a significant amount of time.   *Id.* at ¶ 11.   This Court reversed the district court's decision, concluding the custodial parent's desire to live with her spouse was a dominant factor in the case and the district court did not consider the noneconomic benefits of the move, which included the importance of the stability and continuity of the custodial family and the new marriage.   *Id.* at ¶ 14.

■■ [¶ 17]   Here, there was evidence of both economic and noneconomic benefits.   Valnes wanted to move to North Carolina to live with her new husband. Maintaining continuity and stability in the custodial family includes allowing the custodial family to relocate to be with a new spouse.   *Gilbert,* 2007 ND 66, ¶ 13, 730 N.W.2d 833.   Noneconomic benefits in-

clude the custodial parent's well being, and we have said:

> Prohibiting a move by the custodial parent may force that parent to choose between custody of his or her child and opportunities that may benefit the family unit, including the child as well as the parent. These may include a new marriage, an important job opportunity, or a return to the help provided by an extended family in the rearing of the child by a single parent. Imposing this choice can be severely detrimental to the psychological and economic well-being of the parent over many years. It also has the potential for burdening the parent-child relationship for many years, regardless of the choice the parent makes.

*Stout,* 1997 ND 61, ¶ 18, 560 N.W.2d 903 (quoting Judith S. Wallerstein and Tony J. Tanke, *To Move or Not to Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce,* 30 Fam. L.Q. 305, 314–15 (1996)). We have also said improvements in the custodial parent's quality of life ordinarily benefit the child:

> The children's best interests are inextricably interwoven with the quality of life of the custodial parent, with whom they live and upon whom they rely emotionally. A move which benefits the health and well-being of a custodial parent is certainly beneficial to the parent's child, and is consequently in the child's best interests. It is axiomatic that a newly-wed couple wants to live together and that the child is benefitted by the satisfaction that the custodial parent derives from residing with her spouse.

*Tibor v. Tibor,* 1999 ND 150, ¶ 13, 598 N.W.2d 480 (citations and quotations omitted). "When the custodial parent desires to move to live with a new spouse, we conclude that fact becomes dominant in favor of allowing the move. . . ." *Gilbert,* at ¶ 14.

[¶ 18]   There was evidence Clint Valnes will be stationed in North Carolina, and Valnes testified she would not move to North Carolina and leave her child in North Dakota if the court denied her motion. Denying Valnes's motion would force Valnes to choose between living with her child or her new spouse. Valnes's desire to live with her new spouse is a dominant factor in this case and strongly supports allowing Valnes to move to North Carolina with the child. Although there was evidence Clint Valnes may be deployed for a year, there was also evidence Valnes would be able to live with him for five months before the deployment and he will return to North Carolina after his deployment is over. The court considered that Clint Valnes would likely be deployed for a year and would not be with Valnes and the child during that time. The court also considered that Valnes will not have extended family nearby to help support her while her husband is deployed and recommended she consider returning to North Dakota during that time. The district court found keeping the custodial family intact, including allowing Valnes to live with her new husband, was the dominant factor in this case. The evidence supports the court's findings.

[¶ 19]   There was also evidence of the economic advantages of the move. Valnes testified her husband's income is sufficient to support their family and she was not planning to immediately seek employment in North Carolina because she planned to stay at home with the child. Valnes testified that she was currently staying with her parents in North Dakota; however, if she was not able to move to North Carolina, she would need to find another place to live and would not be able to stay at home with the child because she would

need to work to pay for the second residence. The evidence supports the court's finding that there were various economic benefits to the move.

[¶ 20] There was evidence of both economic and noneconomic advantages of the move. The evidence supports the court's findings on the first factor, and the court properly applied the law.

B

[¶ 21] The second *Stout–Hawkinson* factor requires the court to consider the custodial parent's motives for the move and whether it is to deter visitation. Hruby claims the evidence does not support the court's finding that Valnes was not motivated to relocate by an effort to defeat or deter his visitation with the child.

[¶ 22] The district court found Valnes's motive to relocate was to live with her husband and not to defeat or deter visitation. There was evidence Clint Valnes would be stationed in North Carolina and Valnes wanted to live with her husband. Although there were issues with visitation in the past, there was no evidence Valnes wanted to relocate to deter visitation. In this case, the prior visitation issues are more of a consideration under the fourth factor and in determining whether Valnes will foster the child's relationship with Hruby and comply with the ordered visitation. The evidence supports the court's findings on the second factor.

C

[¶ 23] The fourth *Stout–Hawkinson* factor requires the court to consider the potential negative impact on the relationship between the noncustodial parent and child. A relocation should be denied based on the fourth factor only in exceptional circumstances, including when the court finds a custodial parent would not foster the child's relationship with the non-custodial parent and would not comply with any visitation schedule the court could order. *Graner v. Graner*, 2007 ND 139, ¶ 19, 738 N.W.2d 9.

[¶ 24] Hruby claims the evidence does not support the court's finding that the court's visitation schedule will provide an adequate basis for preserving and fostering his relationship with the child. He contends there was overwhelming evidence Valnes has not complied with the ordered visitation in the past, the court failed to address Valnes's history of interfering with his visitation, and Valnes will continue to interfere with his visitation and will not comply with ordered visitation.

[¶ 25] The district court considered the potential negative impact the move will have on Hruby and the child, and found it could fashion a visitation schedule which could provide an adequate basis for preserving and fostering the relationship between Hruby and the child. The court found that there had been minor problems with visitation exchanges in the past, but that the parents would comply with the ordered visitation. During the court's oral findings, the court considered the parties' prior visitation issues and found:

> While I don't make any finding that your motive in this move is for anything other than to live with your new husband, I do think that you have been at times inflexible in facilitating visitation. I appreciate that the testimony is that in fact there was only one missed visitation and in fact, you let Mr. Hruby's mother have visitation during that time. I think that you have to back away from the position that because you have custody, you are a dictator as to when and where things happen. If the two of you don't agree, then I have to be the dictator, and I'm going to tell when it's gonna happen and where it's gonna happen, who's gonna pay for it, and if you contin-

ue to frustrate visitation, then, and I'm sure that [your attorney] has had this conversation with you, but continued frustration of visitation at the expense of the non-custodial parent is grounds to change custody. That, coupled with the fact that your child is now gonna be not only far from your parents, but far from his parents and far from him, is a factor that this court or any other court will consider if this matter comes back because you have failed to be flexible. It's time for you to embrace your new relationship, understand that your past relationship produced a child, and you need to react as an adult to the difficulties that life throws at both of you as far as facilitating visitation. And you are absolutely required to facilitate and foster visitation and a meaningful relationship for [the child] and her father.

[¶ 26] The district court found the past visitation issues were minor. The evidence supports this finding. There was no evidence Valnes has ever withheld visitation. The visitation issues were mainly due to changes in exchange times or locations. The district court's visitation schedule addresses these problems and requires Hruby to purchase the airline tickets setting the time and place to exchange the child, requires Hruby to fly to North Carolina to pick up the child for visitation, and requires Valnes to fly to North Dakota at the end of the visitation to pick up the child. The court's visitation schedule should help prevent the parties' past visitation issues from occurring in the future.

[¶ 27] However, if the visitation issues continue, frustration of visitation can be grounds for a modification of custody. *See Hendrickson v. Hendrickson,* 2000 ND 1, ¶ 18, 603 N.W.2d 896. Valnes testified that the district court chastised her during the hearings for the 2006 contempt motions and told her to stop what she was doing. After the hearing on Valnes's motion to relocate, the district court warned her that she cannot continue to frustrate visitation or it would be grounds to change custody. Valnes has been warned that interfering with Hruby's visitation can result in a change of custody.

[¶ 28] " 'Distance alone is not a sufficient basis to deny relocation; it must be considered in the context of the ability to refashion a visitation schedule that can foster the noncustodial parent/child relationship.' " *See Porter v. Porter,* 2006 ND 123, ¶ 17, 714 N.W.2d 865 (quoting *Goff v. Goff,* 1999 ND 95, ¶ 17, 593 N.W.2d 768). The same amount and frequency of visitation may not be possible, but a visitation schedule with less frequent and longer visitation periods will preserve the noncustodial parent's ability to foster and develop a relationship with the child. *Porter,* at ¶ 17. Virtual visitation, using the telephone, Internet, and other technologies, can also ensure the child has frequent meaningful contact with the noncustodial parent and can be helpful to supplement in-person visitation. *Gilbert,* 2007 ND 66, ¶ 22, 730 N.W.2d 833.

[¶ 29] The district court modified the visitation schedule, giving Hruby visitation with the child for a week over Thanksgiving every year, a week during Christmas vacation every year, a week during spring break every year, six weeks of summer vacation in 2009, seven weeks of summer vacation in 2010, and eight weeks of summer vacation every year after. Hruby was given three one-week periods of visitation with the child in North Carolina any time during the year. Hruby is to have telephone and email contact with the child and live video access with the child through Skype for a one-hour period three times a week. The court found this visitation schedule would preserve Hruby's ability to foster and preserve a relationship with the

child. The evidence supports the court's findings.

### D

[¶ 30] The evidence supports the court's finding that the move is in the child's best interests, and we are not left with a definite and firm conviction a mistake has been made. We affirm the court's relocation decision, concluding it is not clearly erroneous.

### III

[¶ 31] Hruby argues the district court erred in denying his motion to amend the findings and for a new trial. Hruby moved to amend the findings and for a new trial challenging some of the court's findings about the *Stout–Hawkinson* factors. We have held the evidence supports the court's findings.

[¶ 32] However, Hruby also contends the court's written order should be amended because it is contrary to the court's oral findings, which the court incorporated in its written order. The court's written order states:

A Christmas vacation with the child for seven days each year. In even numbered years Defendant shall be entitled to his seven day Christmas vacation with the minor child from December 24 until December 31. In odd numbered years he shall be entitled to a seven day vacation with the minor child from December 16 through December 23.

In its oral findings the court said:

Let's start with Christmas and we'll go through the calendar starting there. Parties are gonna alternate the first half and second half of the Christmas vacation, but the child is not in school yet, so I'm gonna try to define the Christmas visitation. It's gonna start and this is gonna be an airline flight that will start the day before Christmas Eve, which is the 23rd of December. So the child will arrive, whether coming or going home, the evening presumably of the 23rd, have seven full days, and then return. If she's coming to North Dakota to be with Mr. Hruby on the 31st and then we'll do the same, so it will [sic] travel days on either end of a seven day period. We're taking a 14 day holiday. Now, I don't want to set you up for failure. I don't know what the Christmas break time will be once she's in school. So that's gonna be for now. You're gonna be communicating with each other by e-mail and otherwise in order to arrange visitation. At a minimum she's gonna have seven days on the ground. So if she flies into North Dakota, the next day starts a seven day period and then she flies out on the eighth day, and that is gonna happen on the first half of her Christmas break one year here. It's gonna happen on the second half the next year. So the two of you are gonna need to cooperate in that regard to make sure that she doesn't have some issues with school. If there's a shortage, it's gonna be your shortage, because you're the custodial parent and you have a great deal more time with her. So, Mr. Hruby's gonna have that seven day period whether on the front or the back of the Christmas holiday regardless.

[¶ 33] The court's oral findings and written order are not consistent. Valnes agrees the oral and written findings conflict and the order needs to be amended to be consistent with the court's oral findings.

[¶ 34] Hruby also claims the court's order must be amended because the court did not include all its oral findings in the written order. During the hearing the court stated the days the child travels will not be included in Hruby's visitation time,

but would be in addition to his visitation time.

[¶ 35] On remand, the court shall clarify its order with respect to the Christmas holiday, including the exclusion of travel days.

## IV

[¶ 36] We conclude the district court's decision to grant Valnes's motion for permission to relocate is not clearly erroneous. We affirm, but remand for the district court to correct the error in the visitation provisions.

[¶ 37] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 38] I would affirm for the reasons set forth in the district court's findings of fact, conclusions of law, and order.

[¶ 39] I believe that the findings of the district court are supported by the record and that it appropriately analyzed the four *Stout–Hawkinson* factors. *Stout v. Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903; *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144.

[¶ 40] Although the majority says that Candice Valnes's desire to join her new husband dominates under the facts of this case, I do not understand the majority to say that a custodial parent's stated desire to join a new spouse would automatically result in approval for a move to another state, regardless of the facts that might be found under any of the four factors.

[¶ 41] There is evidence here upon which another fact-finder may have found willful interference with visitation. But the finding of the district court is permitted by the evidence. If there is, in fact, interference in the future, the district

court can take appropriate action, which could include a change of custody.

[¶ 42] DALE V. SANDSTROM