# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2018 ND 258

Brittany Lynn Green,                                    Plaintiff and Appellant

v.

Scott James Swiers,                                    Defendant and Appellee

and

State of North Dakota,                        Statutory Real Party in Interest

No. 20180114

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Donald Hager, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Justice.

Pamela F. Coleman, Grand Forks, ND, for plaintiff and appellant.

Kelsey L. Hankey, Grand Forks, ND, for defendant and appellee.

**Green v. Swiers**

**No. 20180114**

**Jensen, Justice.**

[¶1]     Brittany Green appeals from a district court's order denying her motion to relocate with the parties' minor child and granting Scott Swiers' motion to modify parenting time.  Green argues the district court erred in denying the motion to relocate because it did not properly analyze and weigh the *Stout-Hawkinson* factors.  Green also argues the district court erred in finding a material change in circumstance sufficient to justify modification of parenting time.  We affirm.

I

[¶2]     Green and Swiers are the parents of a minor child, ILS, born in June 2016.  Shortly after ILS's birth, the parties terminated their relationship and a disagreement arose regarding their parenting time with ILS.  After participating in North Dakota's family law mediation program, the parties stipulated to the terms of their parenting time.  In October 2016, the district court adopted the parties' stipulation and ordered the entry of a judgment providing Green with primary residential responsibility of ILS subject to a parenting schedule for Swiers.

[¶3]     In May 2017, Swiers filed a motion to modify primary residential responsibility or in the alternative, modify parenting time.  Green opposed Swiers' motion and sought approval from the district court to relocate to Seattle, Washington, where she planned to reside with her fiancé.  The district court denied Swiers' request to modify primary residential responsibility, granted his motion to modify the parenting time schedule, and denied Green's motion to relocate with ILS.

II

[¶4]     Green argues the district court erred by denying her motion to relocate with the minor child.  "A district court's decision on a motion to relocate is a finding of fact,

1

which will not be reversed on appeal unless it is clearly erroneous." *Larson v. Larson*, 2016 ND 76, ¶ 21, 878 N.W.2d 54. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or, if there is some evidence to support the finding, on the entire record we are left with a definite and firm conviction a mistake has been made." *Graner v. Graner*, 2007 ND 139, ¶ 12, 738 N.W.2d 9. "In applying the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court's decision merely because this Court may have reached a different result." *Hammeren v. Hammeren*, 2012 ND 225, ¶ 8, 823 N.W.2d 482.

[¶5]    Section 14-09-07(1), N.D.C.C., provides "[a] parent with primary residential responsibility for a child may not change the primary residence of the child to another state except upon order of the court or with the consent of the other parent, if the other parent has been given parenting time by the decree." "The parent moving for permission to relocate has the burden of proving by a preponderance of the evidence the move is in the child's best interests." *Larson*, 2016 ND 76, ¶ 21, 878 N.W.2d 54. To determine whether relocation is in the child's best interest, the district court must apply the four factors outlined in *Stout v. Stout*, 1997 ND 61, ¶ 33, 560 N.W.2d 903, and modified in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144. Those factors generally read as follows:

> 1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,
> 2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,
> 3. The integrity of the noncustodial parent's motives for opposing the move,
> 4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the

2

child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Stout,* at ¶¶ 33-34; *Hawkinson*, at ¶¶ 6, 9. "No single factor is dominant, and what may be a minor factor in one case may have a greater impact in another." *Stai-Johnson v. Johnson*, 2015 ND 99, ¶ 6, 862 N.W.2d 823. Green asserts the district court erred in its analysis of factors one, two, and four.

[¶6] Factor one requires the district court to determine the prospective advantages of the move in improving the custodial parent's and child's quality of life. *Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903. When determining the prospective advantages of the move in improving the custodial parent's and child's quality of life, a district court may consider:

> [T]he custodial parent's proposed employment at the relocation site, whether the custodial parent's and child's health and well-being are benefitted, whether the custodial parent has remarried and requests to move to live with the new spouse, whether the custodial parent will have more time to spend with the child, whether there are family members who will provide a support network, the child's reasonable preference, and educational opportunities.

*Graner*, 2007 ND 139, ¶ 15, 738 N.W.2d 9.

[¶7] Green testified she did not plan to seek employment if allowed to move with ILS to Seattle. Instead, she would be a stay-at-home mother and her fiancé would provide support for her and ILS. The district court questioned whether the move would provide any economic benefit because Green would be terminating her current employment. The district court also rejected Green's suggestion that Seattle will be a better social and educational environment for ILS. Additionally, the district court noted that Green, Green's fiancé, and Swiers all had a significant number of family members in the Red River Valley area and leaving the area would negate the existing support network.

3

[¶8]   Green analogizes her situation to *Booen v. Appel*, where this Court affirmed a district court ruling which granted a mother's motion to relocate a minor child in order to follow her fiancé.  2017 ND 189, ¶¶ 4-5, 899 N.W.2d 648.  However, the matters are distinguishable.  In *Booen*, the district court placed great weight on the fiancé and mother having a child together and the benefit of keeping that family unit united.  Green and her fiancé have no children together.  The district court in *Booen* also believed the fiancé's business opportunities associated with the move were likely to benefit the minor child, whereas here, the district court was skeptical of the fiancé's ability to make ends meet for the entire household.  There is sufficient evidence in the record to support the district court's findings under the first *Stout-Hawkinson* factor regarding the prospective advantages of the move in improving the custodial parent's and child's quality of life.  The district court did not misapply the law, this Court does not reweigh the evidence, and we are not left with a definite and firm conviction the district court made a mistake.

[¶9]   In analyzing the integrity of Green's motive for relocation, the district court found the potential relocation was motivated, at least in part, by Green's desire to distance ILS from Swiers and his family.  Generally, a custodial parent's relocation cannot be motivated by a desire to put distance between the minor child and the other parent.  *See Porter v. Porter*, 2006 ND 123, ¶ 13, 714 N.W.2d 865.  The district court heard testimony and received evidence of Green's animosity towards Swiers, as well as her desire to replace Swiers with her fiancé.  Green responded by challenging the credibility of the evidence and the weight that should be given to that evidence. There is sufficient evidence to support the district court's findings under the second *Stout-Hawkinson* factor.  This Court does not reweigh that evidence, the district court did not misapply the law, and we are not left with a definite and firm conviction the district court made a mistake.

[¶10]   When considering the potential negative impact on the relationship between the noncustodial parent and the child, the ability to restructure parenting time to preserve the relationship is relevant.  *See Larson*, 2016 ND 76, ¶ 27, 878 N.W.2d 54. "A relocation should be denied based on the fourth factor only in exceptional circumstances, including when the court finds a custodial parent would not foster the child's relationship with the noncustodial parent and would not comply with any visitation schedule the court could order." *Hruby v. Hruby*, 2009 ND 203, ¶ 23, 776 N.W.2d 530.

[¶11]   The district court found that Green would not foster ILS's relationship with Swiers and she was unlikely to comply with a parenting time schedule.  The district court heard testimony and received evidence indicating Green believes Swiers is a bad father and would like her fiancé to replace him as ILS's father figure.  The district court also heard much testimony regarding whether Green unilaterally limited Swiers' parenting time, and the district court found Swiers' version of events more credible. The district court did not base its decision solely on the fourth factor, but did find that Green was unlikely to comply with a parenting time schedule if she moved with ILS to Seattle.  There is sufficient evidence to support the district court's findings under the fourth *Stout-Hawkinson* factor.  This Court does not reweigh that evidence, the district court did not misapply the law, and we are not left with a definite and firm conviction the district court made a mistake.

III

[¶12] Green argues the district court erred in finding a material change in circumstance sufficient to justify modification of parenting time.  Under N.D.C.C. § 14-05-22(2), the district court has continuing jurisdiction to modify parenting time. *Capes v. Capes*, 2015 ND 254, ¶ 6, 870 N.W.2d 448.  The standard for modifying parenting time has been established through our caselaw. *Bredeson v. Mackey*, 2014 ND 25, ¶ 6, 842 N.W.2d 860.  To modify parenting time, the movant must establish

5

a material change of circumstances has occurred since the prior parenting time order and that it is in the best interests of the child to modify the order. *Id.*

[¶13] A material change in circumstances sufficient to amend a parenting time order is similar to, but distinct from, a material change in circumstances sufficient to change primary residential responsibility. *Wolt v. Wolt*, 2011 ND 170, ¶ 19, 803 N.W.2d 534 (citing *Young v. Young*, 2008 ND 55, ¶ 13, 746 N.W.2d 153). A material change of circumstances may be sufficient to modify parenting time, but insufficient to modify primary residential responsibility. *See Dufner v. Trottier*, 2010 ND 31, ¶ 12, 778 N.W.2d 586. For the purpose of modifying parenting time, a material change in circumstances is defined as "important new facts that were unknown at the time of the initial custody decree or initial parenting time order." *Wolt,* at ¶ 19.

[¶14] "A district court's decision to modify [parenting time] is a finding of fact, which will not be reversed unless clearly erroneous." *Hanson v. Hanson*, 2005 ND 82, ¶ 20, 695 N.W.2d 205. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if . . . on the entire evidence, we are left with a definite and firm conviction a mistake has been made." *Kienzle v. Selensky*, 2007 ND 167, ¶ 14, 740 N.W.2d 393. In applying the clearly erroneous standard, we do "not reweigh evidence or reassess witness credibility when the evidence supports the [district] court's findings." *Id.*

[¶15] The district court found both parties to lack maturity and neither were fully credible, but ultimately concluded Green had frustrated Swiers' visitation and attempted to hinder his relationship with ILS. "[A] material change of circumstances can exist . . . when there has been an attempt to alienate a child's affection for a parent[.]" *Dufner*, 2010 ND 31, ¶ 16, 778 N.W.2d 586. The record before the district court included evidence suggesting Green attempted to impair the relationship between Swiers and ILS by replacing him with her fiancé and by limiting his parenting time. Green disputed this evidence during the hearing, but this Court does

6

not retry a custody case or substitute our judgment for that of the district court. The district court's finding of a material change sufficient to support modification of parenting time is supported by the record and not clearly erroneous.

IV

[¶16]  We affirm the district court's order denying Green's motion to relocate with the minor child and modification of the parties' parenting time schedule.

[¶17]  Jon J. Jensen
Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte
Gerald W. VandeWalle, C.J.