**Filed 7/22/20 by Clerk of Supreme Court**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 153

Aimee Norby,                                          Plaintiff and Appellant

   v.

Robert Hinesley,                                      Defendant and Appellee

   and

State of North Dakota,                        Statutory Real Party in Interest

## No. 20190337

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Paul W. Jacobson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen and Justices McEvers and Tufte joined, and Justice VandeWalle concurred in the result.

Elizabeth L. Pendlay, Crosby, ND, for plaintiff and appellant; submitted on brief.

Deanna F. Longtin, Williston, ND, for defendant and appellee; submitted on brief.

## Norby v. Hinesley
## No. 20190337

**Crothers, Justice.**

[¶1]   Aimee Norby appeals from a district court order denying her motion to relocate out of state with the parties' minor child. We affirm.

I

[¶2]   Norby and Robert Hinesley are the parents of a child born in 2012. In 2014, Norby filed and served a complaint seeking primary residential responsibility over the child. Norby was awarded primary residential responsibility, and Hinesley was awarded parenting time.

[¶3]   In March 2019, Norby married Lyle Anderson. Anderson works as a diesel mechanic in the Williston, North Dakota, area. Anderson grew up in Smithville, Missouri, and owns a home there. Smithville is a town of approximately 10,000 people about twenty minutes north of Kansas City, Missouri. Norby and Anderson currently reside in Williston with the Norby's and Hinesley's child. Hinesley also lives in Williston.

[¶4]   Norby filed a motion to relocate to Smithville with the child. Hinesley opposed Norby's motion and filed a motion to change primary residential responsibility or modify parenting time. The district court denied Norby's motion to relocate. On appeal, Norby argues the district court erred in denying her motion.

II

[¶5]   We review a district court's order on a motion to relocate under our clearly erroneous standard of review. *Larson v. Larson*, 2016 ND 76, ¶ 8, 878 N.W.2d 54. Under that standard, "A district court's decision on a motion to relocate is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous." *Green v. Swiers*, 2018 ND 258, ¶ 4, 920 N.W.2d 471 (quoting *Larson*, at ¶ 21). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or, if there is some evidence to support the finding, on the entire record we are left with a definite

1

and firm conviction a mistake has been made." *Id.* (quoting *Graner v. Graner*, 2007 ND 139, ¶ 12, 738 N.W.2d 9). "In applying the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court's decision merely because this Court may have reached a different result." *Id.* (quoting *Hammeren v. Hammeren*, 2012 ND 225, ¶ 8, 823 N.W.2d 482). We also recognize "that a trial court may draw inferences from facts presented and may make a finding of fact based upon an inference supported by the evidence." *American Hardware Mut. Ins. Co. v. Nat'l Farmers Union Prop. & Cas. Co.*, 422 N.W.2d 402, 404 (N.D. 1988) (citing *Poyzer v. Amenia Seed & Grain Co.*, 409 N.W.2d 107 (N.D.1987)).

[¶6] Section 14-09-07(1), N.D.C.C., provides, "[a] parent with primary residential responsibility for a child may not change the primary residence of the child to another state except upon order of the court or with the consent of the other parent, if the other parent has been given parenting time by the decree." "The parent moving for permission to relocate has the burden of proving by a preponderance of the evidence the move is in the child's best interests." *Green*, 2018 ND 258, ¶ 5, 920 N.W.2d 471 (quoting *Larson*, 2016 ND 76, ¶ 21, 878 N.W.2d 54). To determine whether relocation is in the child's best interest, the district court must apply the four factors outlined in *Stout v. Stout*, 1997 ND 61, ¶¶ 33-34, 560 N.W.2d 903, and modified in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144:

> "1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,
> 2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,
> 3. The integrity of the noncustodial parent's motives for opposing the move,
> 4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation."

*Stout*, at ¶¶ 33-34; *Hawkinson*, at ¶¶ 6, 9. "No single factor is dominant, and what may be a minor factor in one case may have a greater impact in another." *Green*, at ¶ 5 (quoting *Stai-Johnson v. Johnson*, 2015 ND 99, ¶ 6, 862 N.W.2d 823). Norby argues the district court's findings on factors one, two, and four are clearly erroneous.

A

[¶7] Norby argues the district court's findings under the first *Stout-Hawkinson* factor were clearly erroneous. She argues the evidence demonstrated an out of state move had prospective advantages that would improve her and the child's quality of life. We conclude sufficient evidence supports the district court's finding on factor one.

[¶8] "In analyzing the first *Stout-Hawkinson* factor, 'the district court must balance the advantages of the move, while recognizing the importance of maintaining continuity and stability.'" *Booen v. Appel*, 2017 ND 189, ¶ 10, 899 N.W.2d 648 (quoting *Stai-Johnson*, 2015 ND 99, ¶ 9, 862 N.W.2d 823). "The district court must give due weight to both economic and noneconomic advantages of the move." *Id.* Information the district court may consider when analyzing factor one includes:

> "[T]he custodial parent's proposed employment at the relocation site, whether the custodial parent's and child's health and well-being are benefitted, whether the custodial parent has remarried and requests to move to live with the new spouse, whether the custodial parent will have more time to spend with the child, whether there are family members who will provide a support network, the child's reasonable preference, and educational opportunities."

*Id.* (quoting *Graner*, 2007 ND 139, ¶ 15, 738 N.W.2d 9).

[¶9] The district court found factor one did not favor relocation. The court found Norby's employment opportunities in Smithville are equal to what they are in Williston. Norby works in accounts payable for an oil company. Norby testified she had not secured employment in Smithville but did research various job opportunities including working as a receptionist for a law firm and

as an accountant for Dairy Farmers of America. Norby testified these were lateral employment opportunities and would not be an improvement from her current job in Williston. Norby contended moving to Smithville would provide her with a more stable career because she has been laid off twice in the past twelve years in Williston. However, Norby worked continuously for the past six years in her current employment.

[¶10] Norby testified she wanted to leave Williston because she did not like the weather and wanted a change of scenery. However, these reasons are not compelling. *See Larson*, 2016 ND 76, ¶¶ 24-25, 878 N.W.2d 54 ("While many of the prospective advantages that [Conceicao] suggests—better year-round weather . . . may improve [Conceicao's] quality of life, the Court does not view that the suggested advantages would significantly improve the quality of the children's lives."). Norby also testified the home in Smithville is better suited to raise a child than the apartment in Williston. The child would have his own room in the Smithville home, rather than sleeping on a toddler mattress on the floor in Norby's apartment as he currently does in Williston. The home in Smithville also has a large backyard. Norby and Anderson also testified the cost of living in Smithville is less than in Williston.

[¶11] Other than Norby's and Anderson's testimony, no evidence was introduced comparing the cost of living between Smithville and Williston. The district court found the testimony regarding the cost of living not credible because it had been three years since Anderson resided in Smithville and Norby had never resided in Smithville. Anderson testified making the transition to Williston would not be difficult. The district court found Anderson could sell the home in Smithville and purchase a similar home in Williston without difficulty.

[¶12] Analysis of the first factor also requires focus on the "importance of maintaining continuity and stability in the custodial family." *Graner*, 2007 ND 139, ¶ 15, 738 N.W.2d 9 (quoting *Porter v. Porter*, 2006 ND 123, ¶ 8, 714 N.W.2d 865). Allowing a custodial parent to relocate to keep the custodial home intact is in the child's best interest. *Booen*, 2017 ND 189, ¶ 13, 899 N.W.2d 648; *Hruby v. Hruby*, 2009 ND 203, ¶¶ 17-20, 776 N.W.2d 530. In one case, this Court

stated, "When the custodial parent desires to move to live with a new spouse, we conclude that fact becomes dominant in favor of allowing the move. . . ." *Hruby*, at ¶ 17 (quoting *Gilbert v. Gilbert*, 2007 ND 66, ¶ 14, 730 N.W.2d 833). *But see Green*, 2018 ND 258, ¶ 5, 920 N.W.2d 471 ("No single factor is dominant, and what may be a minor factor in one case may have a greater impact in another."); *id.* at ¶ 8 (concluding denial of motion to relocate was not clearly erroneous when custodial parent and new husband did not have children together and court was skeptical of economic benefits of relocation).

[¶13] Anderson testified he would keep his current job in Williston, even if the court granted Norby's motion. Anderson testified that if the court denied Norby's motion he would sell the home in Smithville and move to Williston to live with Norby and the child. Anderson testified this change in plans would not be difficult. Norby and Anderson do not have children together, but they both testified they would eventually like to have children. The district court found denying Norby's motion to relocate would not separate the custodial family because Anderson still would travel to work in Williston or would sell the Smithville home and move to Williston.

[¶14] The evidence also established most of Norby's extended family live near Sidney and Fairview, Montana, within an hour of Williston. Most of Hinesley's extended family lives outside of North Dakota in North Carolina, Arizona, and California. However, his grandmother lives in Bismarck, North Dakota. Anderson's extended family lives near Smithville. Relocating to Smithville would move the child closer to Anderson's extended family but would move him away from Norby's extended family. Norby testified the move to Smithville might be five hours closer to Hinesley's extended family. However, the record was not clear on which relative(s) Norby was referring to or the travel time to where Hinesley's extended family reside. Anderson also testified he would keep his job as a diesel mechanic in Williston, even if the court granted the motion to relocate. Anderson works two-week-on, two-week-off shifts, which often consist of twelve-hour days. Currently, Anderson spends approximately a week of his two weeks off at the home in Smithville while Norby and the child remain in Williston. If Norby, Anderson, and the child relocated to Smithville,

Anderson would travel from Smithville to Williston to complete his two-week shift. This arrangement would result in Anderson spending less time with Norby and the child than he does now. The district court found Norby and the child would not receive the benefits of extended family if they relocated. Additionally, the court found relocating would result in a detriment to the child because he would spend less time with both Hinesley and Anderson.

[¶15] Norby argues the district court erred by not considering or adequately weighing evidence that schools in Smithville are superior to those in Williston. Anderson testified the schools in Smithville have received high national rankings. Norby testified the child would be in a classroom with a twenty-to-one student to teacher ratio if the child attended school in Williston, compared to a sixteen-to-one ratio if he attended school in Smithville. Additionally, Norby and Anderson testified there are additional activities to do in Smithville including boating and camping, museums, zoos, and professional sports games in Kansas City, Missouri. Other than the professional sports, the district court found the same activities were available in Williston.

[¶16] The district court found denying Norby's motion to relocate was in the best interests of the parties' child because moving to Missouri would not be beneficial to Norby or the child. The district court's findings on factor one are supported by the evidence and are not clearly erroneous.

B

[¶17] Norby argues the district court's findings were clearly erroneous because there was no indication the move was premised upon an effort to limit Hinesley's parenting time. We conclude sufficient evidence supports the district court's finding on factor two.

[¶18] Under its analysis of the second factor the district court found:

"The relocation should be denied because the parenting plan stated by the Plaintiff gives very little parenting time to the father. She offered two weeks in the beginning and at the end of summer, that he would have to split with her family members, as well as the major school breaks. In addition, this arrangement was not

6

guaranteed and was instead conditioned on her work schedule and financial ability. While the Defendant stated he would do whatever it takes to see his child and would help financially if necessary, it is unfair to expect the Defendant to financially support the Plaintiff's decision to move."

[¶19] The district court also found, "In addition, the Plaintiff has frustrated the Defendant's parenting time and has reneged on her offers of additional parenting time when a confrontation has ensued in the past." The court also found Norby wants to move to Missouri where she knows nobody, has no family, will see her husband less because he still will work in Williston two weeks at a time, and she had not seriously looked for a job in Missouri. Both evidence from the testimony and permissible inferences from that evidence support the district court's finding on factor two and are not clearly erroneous.

C

[¶20] Norby argues the district court's findings on factor four were clearly erroneous because it based its decision on the possibility of hindering Hinesley's undefined informal parenting time schedule. She further argues the evidence demonstrated she would comply with any visitation ordered by the court. We conclude sufficient evidence supports the district court's finding on factor four.

[¶21] The fourth factor requires consideration of, "The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation." *Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144. "A relocation should be denied based on the fourth factor only in exceptional circumstances, including when the court finds a custodial parent would not foster the child's relationship with the noncustodial parent and would not comply with any visitation schedule the court could order." *Booen*, 2017 ND 189, ¶ 15, 899 N.W.2d 648 (quoting *Hruby*, 2009 ND 203, ¶ 23, 776 N.W.2d 530).

7

[¶22] "Distance alone is not a sufficient basis to deny relocation; it must be considered in the context of the ability to refashion a visitation schedule that can foster the noncustodial parent/child relationship." *Porter*, 2006 ND 123, ¶ 17, 714 N.W.2d 865 (quoting *Goff v. Goff*, 1999 ND 95, ¶ 17, 593 N.W.2d 768). "Even though a move may add costs and distance to visitations, making it impossible to continue the frequency of visits between the noncustodial parent and child, the relationship between them can be preserved by a restructured visitation schedule." *Booen*, 2017 ND 189, ¶ 15, 899 N.W.2d 648 (quoting *Stai-Johnson*, 2015 ND 99, ¶ 13, 862 N.W.2d 823); *see Porter*, at ¶ 18. "Virtual visitation, using the telephone, Internet, and other technologies, can also ensure the child has frequent meaningful contact with the noncustodial parent and can be helpful to supplement in-person visitation." *Booen*, at ¶ 15 (quoting *Hruby*, 2009 ND 203, ¶ 28, 776 N.W.2d 530).

[¶23] The district court combined its consideration of factors three and four and found:

> "The Defendant is contesting the Plaintiff's move simply because he wants his child to continue to have a relationship with himself. The Defendant's fiancé and her child, and their child together. The child has a baby half-sister and prospective step-brother in his father's home. Testimony showed that the child calls his siblings sister and brother. It is important to the child's development that he have a healthy and loving relationship with these siblings. The Defendant and his immediate family should not be stripped from the child. The Defendant has very good reason for contesting this relocation as he has the right to play an active part in the child's upbringing and spending this important time of life with him on a regular basis. The Defendant and the Defendant's fiancé as well as their children are involved in N.N.H.'s life. The Defendant coached the child's t-ball team this summer. The Defendant's fiancé has a strong, loving bond and relationship with the child. In addition, she is available to help care for the child on a regular basis. The Defendant stated in testimony and affidavit that he has had substantial amounts of time when the Plaintiff needed him to babysit and therefore has been very involved in N.N.H.'s life.

8

> "The distance alone is a significant factor in this case as the driving distance from Williston to Smithville is significant and will deter the child's parenting time with his father.
>
> "The Defendant is not challenging the move for ill-intent as the relocation would have a substantial negative impact on the relationship between the child and his father, and the child's paternal family."

[¶24] The district court also found Norby's proposal for Hinesley's parenting time would not allow Hinesley to preserve and foster his relationship with the child, that Norby's proposal for sharing transportation costs was unfair to Hinesley, and that Norby frustrated Hinesley's parenting time on prior occasions. These findings consider the potential negative impact on the relationship between Hinesley and the child, including whether there is a realistic opportunity for parenting time which can provide an adequate basis for preserving and fostering Hinesley's relationship with the child if relocation is allowed, and the likelihood each parent will comply with the proposed new arrangements. We conclude evidence exists supporting the district court's findings so that they are not clearly erroneous.

III

[¶25] The district court findings on factors one, two and four are supported by the evidence and are not clearly erroneous. The district court order denying Norby's motion to relocate out of state with the parties' child is affirmed.

[¶26] Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Jon J. Jensen, C.J.

I concur in the result.
Gerald W. VandeWalle

9