20230264

**FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
FEBRUARY 22, 2024
STATE OF NORTH DAKOTA**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 31

Stephanie J. Nelson,                                    Plaintiff and Appellee

v.

Travis C. Nelson,                                    Defendant and Appellant

and

State of North Dakota,                    Statutory Real Party in Interest

## No. 20230264

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Steven E. McCullough, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Kristen A. Hushka, Fargo, ND, for plaintiff and appellee.

Kimberlie M. Larson, West Fargo, ND, for defendant and appellant.

**Nelson v. Nelson, et al.**
**No. 20230264**

**Crothers, Justice.**

[¶1] Travis Nelson appeals a district court's order granting Stephanie Nelson's motion to relocate their children to the Minneapolis, Minnesota area and the subsequent amended judgments. Travis Nelson appeals several of the court's findings of fact and argues it misapplied the law when interpreting *Stout-Hawkinson* factors one, two, and four. He also argues that the court placed too much significance on Stephanie Nelson's new marriage, which creates a "super factor" outside the *Stout-Hawkinson* factors. We affirm.

I

[¶2] Travis and Stephanie Nelson divorced in November 2018. The couple have two children, A.J.N. and L.J.N. Stephanie Nelson received primary residential responsibility and Travis Nelson received weekly parenting time. Travis and Stephanie Nelson remained in the Fargo area after the divorce. In early 2020, A.J.N. and L.J.N. attended weekly counseling sessions, but at the time of trial attended biweekly counseling sessions.

[¶3] In September 2021, Stephanie Nelson married Brady Rupard. Rupard lives and works in Forest Lake, Minnesota, and has a career as a "trouble" lineman for a major energy company. Stephanie Nelson and Rupard maintain two households. In September 2022, Stephanie Nelson made a motion to relocate to the "North metro area of the Minneapolis-St. Paul area of Minnesota" to live with Rupard. Travis Nelson challenged the motion.

[¶4] On January 31, 2023, the district court commenced a two-day evidentiary hearing, found relocation is in the children's best interests, and granted Stephanie Nelson's motion to relocate. The court found *Stout-Hawkinson* factors one and two outweighed factors three and four. The court

amended its original judgment to adjust Travis Nelson's parenting time and to allow relocation.

[¶5]   Travis Nelson timely appealed and moved to stay enforcement of the judgment to relocate. The district court denied the motion for a stay.

II

[¶6]   "A district court's decision on a motion to relocate is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous." *Green v. Swiers*, 2018 ND 258, ¶ 4, 920 N.W.2d 471 (citing *Larson v. Larson*, 2016 ND 76, ¶ 21, 878 N.W.2d 54). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or, if there is some evidence to support the finding, on the entire record we are left with a definite and firm conviction a mistake has been made." *Graner v. Graner*, 2007 ND 139, ¶ 12, 738 N.W.2d 9. "In applying the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court's decision merely because this Court may have reached a different result." *Norby v. Hinesley*, 2020 ND 153, ¶ 5, 946 N.W.2d 494. This Court also held "that a trial court may draw inferences from facts presented and may make a finding of fact based upon an inference supported by the evidence." *Id.*

[¶7]   "A parent with primary residential responsibility for a child may not change the primary residence of the child to another state except" when the other parent consents or by decree or court order that allows for parenting time with the non-moving parent. N.D.C.C. § 14-09-07(1). "The parent moving for permission to relocate has the burden of proving by a preponderance of the evidence the move is in the child's best interests." *Larson*, 2016 ND 76, ¶ 21. A district court, in determining whether relocation is in the child's best interests, must apply the *Stout-Hawkinson* factors. *Green*, 2018 ND 258, ¶ 5. The *Stout-Hawkinson* factors include:

"1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation."

*Green*, at ¶ 5. "No single factor is dominant, and what may be a minor factor in one case may have a greater impact in another." *Stai-Johnson v. Johnson*, 2015 ND 99, ¶ 6, 862 N.W.2d 823. When the moving "parent desires to move to live with a new spouse, we conclude that fact becomes dominant in favor of allowing the move." *Norby*, 2020 ND 153, ¶ 12.

A

[¶8] Travis Nelson argues the district court erred by finding *Stout-Hawkinson* factor one favored relocation.

[¶9] The first factor considers, "[t]he prospective advantages of the move in improving the custodial parent's and child's quality of life." *Green*, 2018 ND 258, ¶ 5. "In analyzing the first *Stout-Hawkinson* factor, 'the district court must balance the advantages of the move, while recognizing the importance of maintaining continuity and stability.'" *Norby*, 2020 ND 153, ¶ 8. The court must weigh economic and noneconomic advantages for the move. *Id*. The information the court may consider includes:

"The custodial parent's proposed employment at the relocation site, whether the custodial parent's and child's health and well-being are benefitted, whether the custodial parent has remarried and requests to move to live with the new spouse, whether the custodial parent will have more time to spend with the child, whether there are family members who will provide a support network, the child's reasonable preference, and educational opportunities."

*Id.* "Analysis of the first factor also requires focus on the importance of maintaining continuity and stability in the custodial family." *Id.* at ¶ 12 (cleaned up).

[¶10] The district court found several advantages of relocation for Stephanie Nelson, including that residing in a single, family home with Rupard would be beneficial. Rupard and Stephanie Nelson currently reside in different households with duplicative expenses. The court found the couple would benefit financially from having a single, family home because Rupard works 70 hours a week to meet the expenses of the two households. The court also found that a single, family home would allow Rupard to have more time with A.J.N. and L.J.N.

[¶11] The district court found relocation would benefit A.J.N. and L.J.N. The children's benefits include establishing a relationship with Rupard's children and Stephanie Nelson's extended family. The relocation would negatively affect relationships of friends and Travis Nelson's extended family in the Fargo area. Moreover, the court found that A.J.N. and L.J.N.'s maternal grandmother planned on moving to Minnesota and would give the children a familiar face in the area. The children's counselor testified she is "not sure" if the outcome of the relocation hearing would affect the children.

[¶12] The district court found some coinciding benefits for Stephanie Nelson and the children. The court heard testimony that if it denied the motion to relocate, Stephanie Nelson would obtain a part-time job to assist in covering expenses. Stephanie Nelson is a stay-at-home parent. If the court denied the

4

motion, she would spend less time with the children. Furthermore, Stephanie Nelson provided an exhibit about the potential cities where she plans to relocate. The exhibit included crime statistics, schools, parks, counselors, and other amenities from Cambridge, Forest Lake, and North Branch, Minnesota. Her research also compared Fargo crime statistics to these potential relocation sites. The court found the relocation sites to be safe with good schools and amenities for the children.

[¶13] The district court's findings were not induced by an erroneous view of the law, evidence exists to support the finding, and, on the entire record, this Court is not left with a definite and firm conviction a mistake was made. The court did not err in its application of the facts or law in the analysis of the first *Stout-Hawkinson* factor.

B

[¶14] Travis Nelson argues the district court erred in finding Stephanie Nelson's motion to relocate does not lack integrity because she allegedly hampered his ability to meet with the children. He also alleges Rupard did not fully investigate relocating to Fargo.

[¶15] The second *Stout-Hawkinson* factor requires inquiry into "[t]he integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent." *Green*, 2018 ND 258, ¶ 5.

[¶16] The district court found that Stephanie Nelson did not make the motion to relocate to affect Travis Nelson's parenting time, but to solidify her personal life. The record does not show any serious attempts of blocking Travis Nelson's parenting time outside of a few incidents. These incidents do not indicate future problems with his ability to maintain a relationship with A.J.N. and L.J.N. The court made comments about Travis and Stephanie Nelson's ability to co-parent. The court said, "this is some of the mildest disagreement I've ever seen in these cases." Moreover, "[t]here's always friction when there's a divorce.

5

Nobody agrees with everything the other side does." Finally, the court said, "you guys are getting along great."

[¶17] Rupard testified the Fargo branch of his employer does not have a "trouble" lineman department similar to the one he works at in the Minneapolis area and he is unable to transfer from his current position to one in Fargo. Rupard testified that he does not know if similar employers in the Fargo/Moorhead area have "trouble" lineman departments. Rupard earned $260,019 in gross wages for 2022, and he testified he would not receive as great of earnings in Fargo. Rupard testified that moving to Fargo and earning $104,000 would affect his ability to meet his financial obligations, including $4,000 in monthly child and spousal support.

[¶18] The district court's findings on the second *Stout-Hawkinson* factor were not induced by an erroneous view of the law, evidence exists to support the findings, and, on the entire record, this Court is not left with a definite and firm conviction a mistake was made. The court did not err in its application of the facts or law in the analysis of the second *Stout-Hawkinson* factor.

C

[¶19] Travis Nelson claims the district court erred in interpreting the fourth *Stout-Hawkinson* factor. He argues the court erred in finding the fourth factor "can only mandate denial of relocation if the court determines the relocating parent will not foster the parent-child relationship of the other parent." Loosely, he argues this Court should expand the definition of "exceptional circumstances" to include certain facts that weigh in his favor.

[¶20] The fourth *Stout-Hawkinson* factor considers:

> "The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the

6

likelihood that each parent will comply with such alternate visitation."

*Green*, 2018 ND 258, ¶ 5.

[¶21] "When considering the potential negative impact on the relationship between the [non-moving] parent and the child, the ability to restructure parenting time to preserve the relationship is relevant." *Green*, 2018 ND 258, ¶ 10. "A relocation should be denied based on the fourth factor only in exceptional circumstances, including when the court finds" the parent with residential responsibility "would not foster the child's relationship with the [non-moving] parent and would not comply with any [parenting time] the court could order." *Hruby v. Hruby*, 2009 ND 203, ¶ 23, 776 N.W.2d 530. The fact a non-moving parent "will not be able to maintain the same [parenting time] schedule is not, alone, a basis for denying permission to" the parent with residential responsibility "to leave the state with the child." *Negaard v. Negaard*, 2002 ND 70, ¶ 16, 642 N.W.2d 916. "Distance alone is not a sufficient basis to deny relocation; it must be considered in the context of the ability to refashion a visitation schedule that can foster" the relationship between the child and the non-moving parent. *Norby*, 2020 ND 153, ¶ 22.

[¶22] Travis Nelson is misinterpreting the district court's order and the *Stout-Hawkinson* factors. The court relied on *Green* to clarify "exceptional circumstances." 2018 ND 258, ¶ 10. In *Green*, this Court held that relocation should be denied if a parent seeking the move does not foster a child's relationship with the non-moving parent or does not comply with court-ordered parenting time. *Id.* at ¶ 15. Here, the court found Stephanie Nelson's proposed new parenting plan allows Travis Nelson significant time with the children, but he would not receive the same amount of time as the initial divorce decree. Stephanie Nelson's proposed parenting plan for Travis Nelson includes two weekends per month, all extended holiday weekends during the school year with caveats for Christmas and Thanksgiving, and most of the summer except a week in July that excludes Independence Day.

7

[¶23] The district court also found Stephanie Nelson does not hinder Travis Nelson's ability to maintain a relationship with the children. The court found Stephanie Nelson showed flexibility and allowed communication between Travis Nelson and the children during his military deployments.

[¶24] The district court found that Travis Nelson was able to maintain a relationship with his son from a previous relationship with a similar parenting plan that split parenting time between Fargo and Minneapolis where the son and former spouse lived. The court found the distance between the children and Travis Nelson is not "automatically and irrevocably damag[ing] his parent-child relationship." The children's counselor testified that she did not know the impact on the children with less continuous time with their father. Travis Nelson's son from a previous relationship testified that his childhood would have been easier if both parents lived in the same area. He also said that, based on his experience, the distance between A.J.N. and L.J.N. with Travis Nelson would not be beneficial. He also testified he has a good relationship with Travis Nelson.

[¶25] Travis Nelson is asking this Court to expand "exceptional circumstances" from *Green*. 2018 ND 258, ¶ 10. He argues "exceptional circumstances" exist here because he now has nearly equal parenting time, attends the children's extracurriculars and counseling, has a loving fiancée, the children have a half-brother, and has extended family nearby with similarly aged cousins. All these circumstances are within the analysis of the other *Stout-Hawkinson* factors. Thus, including these circumstances in factor four would be repetitive.

[¶26] The district court's findings were not induced by an erroneous view of the law, evidence exists to support the findings, and, on the entire record, this Court is not left with a definite and firm conviction the district court made a mistake.

## D

[¶27] Travis Nelson claims the district court created a "super factor" by placing too much emphasis on Stephanie Nelson's marriage to Rupard.

[¶28] The district court must give credence to all *Stout-Hawkinson* factors, but can give more weight to the relocating parent's motion to relocate when it is an attempt to be with a spouse. *Norby*, 2020 ND 153, ¶ 12. Here, the court applied all the factors in its analysis. It found that factor three did not favor relocation. Additionally, the court found that factor four did not outweigh "the strength of the other factors in favor of allowing relocation." The court noted in its findings that "[t]he relocation will permit Stephanie to live with her new spouse and his children in a single family unit." The court did not solely rely on the new marriage when granting relocation. The court did not create a "super factor" in granting the motion to relocate. The court relied on all *Stout-Hawkinson* factors to make its decision. The court's findings were not induced by an erroneous view of the law, evidence exists to support the finding, and, on the entire record, this Court is not left with a definite and firm conviction the district court made a mistake.

## III

[¶29] The district court did not err in applying the *Stout-Hawkinson* factors to the facts. The court's findings were not induced by an erroneous application of the *Stout-Hawkinson* factors. The evidence from the record supports the court's findings. This Court is not left with a definite and firm conviction the district court made a mistake when applying the *Stout-Hawkinson* factors. We affirm.

[¶30] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr